**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

|  |  |
|---|---|
| **JEFFREY ROSE, Individually and On Behalf of All Others Similarly Situated,**<br><br>        **Plaintiff,**<br><br>  **vs.**<br><br>**FERRARI NORTH AMERICA, INC., FERRARI N.V., FERRARI S.P.A., ROBERT BOSCH, LLC, AND ROBERT BOSCH GMBH,**<br><br>        **Defendants.** | **JURY TRIAL DEMANDED**<br><br>Case No. _____ |

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     PARTIES ................................................................................................... 3

III.    JURISDICTION AND VENUE .................................................................. 4

IV.     FACTUAL BACKGROUND ...................................................................... 5

    A.  PLAINTIFF ROSE PURCHASED A DEFECTIVE CLASS VEHICLE AND
        EXPERIENCED THE BRAKE DEFECT ............................................ 5

    B.  FERRARI AND BOSCH KNEW OF THE BRAKE DEFECT BUT
        MISREPRESENTED AND/OR CONCEALED ITS EXISTENCE ......................... 9

        1.  Consumer Complaints to NHTSA ............................................ 11

        2.  Online Consumer Complaints and Reports to Ferrari Authorized Dealers
            and Repair Centers ................................................................. 13

        3.  Highly Publicized Manifestations of the Defect in the Media and
            Litigation ............................................................................. 26

        4.  Ferrari and Bosch Monitored the Above Information and Knew of the
            Existence of the Brake Defect ................................................. 30

    C.  THE INADEQUATE AND UNTIMELY SAFETY RECALL OF CLASS
        VEHICLES ................................................................................... 33

    D.  FERRARI WAS LEGALLY REQUIRED TO DISCLOSE THE BRAKE DEFECT
        AND FAILED TO DO SO ............................................................... 35

V.      FRAUDULENT OMISSION ALLEGATIONS ........................................... 37

VI.     TOLLING OF STATUTES OF LIMITATIONS ........................................ 40

    A.  DISCOVERY RULE TOLLING .................................................... 40

    B.  FRAUDULENT CONCEALMENT TOLLING ................................... 41

    C.  ESTOPPEL ................................................................................... 41

VII.    CLASS ACTION ALLEGATIONS .......................................................... 42

VIII.   NATIONWIDE CLAIMS ........................................................................ 45

    NATIONWIDE COUNT I ........................................................................ 45

        FRAUD BY CONCEALMENT OR OMISSION ................................... 45

    NATIONWIDE COUNT II ...................................................................... 48

        NEGLIGENT MISREPRESENTATION ............................................ 48

    NATIONWIDE COUNT III ..................................................................... 49

        UNJUST ENRICHMENT ............................................................... 49

    NATIONWIDE COUNT IV ..................................................................... 51

        VIOLATION OF THE N.J. CONSUMER FRAUD ACT ("NJCFA") ......... 51

IX.     STATE SPECIFIC CLAIMS .................................................................. 54

GEORGIA COUNTS ........................................................................................................ 54

GEORGIA COUNT I ................................................................................................. 54

X.   PRAYER FOR RELIEF ................................................................................................. 56

XI.  DEMAND FOR JURY TRIAL ...................................................................................... 58

## CLASS ACTION COMPLAINT

Plaintiff Jeffrey Rose ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants Ferrari North America, Inc., Ferrari N.V., Ferrari, S.p.A (collectively "Ferrari"), Robert Bosch, LLC and Robert Bosch GmbH (together "Bosch" and together with Ferrari, "Defendants") to obtain damages, restitution, and/or injunctive relief for himself and on behalf of the proposed Classes as defined herein.  Plaintiff makes the following allegations upon information and belief, except as to his own respective action, the investigation of his counsel, and the facts that are a matter of public record.

## I.   INTRODUCTION

1.     The ability of a vehicle to stop when the driver pushes on the brake pedal cannot be overstated as the paramount safety feature of a vehicle.  Braking is critical to the safety of the driver, passengers within the vehicle, the drivers and occupants of other vehicles in proximity, and innocent bystanders.  Yet, Defendants have failed to inform consumers of the potentially deadly Brake Defect installed in certain 2010-2015 458 Italia, 2014-2015 458 Speciale, 2015 458 Speciale A, 2012-2015 458 Spider, 2016-2019 488 GTB, and the 2016-2019 488 Spider ("Class Vehicles"), much less repair or replace the defective braking system in vehicles sold or leased to consumers nationwide, including Plaintiff.

2.     The braking systems common to and equipped in all of the Class Vehicles are plagued by a design defect that causes a dangerous safety hazard to consumers and upon failure leads to partial or total loss of braking capability (the "Brake Defect"). The cause of the Brake Defect will be further uncovered during discovery, but as a preliminary matter may be related to

leaking brake fluid and/or the master cylinder/brake booster component within the Class Vehicles.[1] Regardless of the underlying cause, the defective braking system common to all Class Vehicles is a clear safety hazard that was never disclosed to any member of the Class prior to purchase.

3.     Defendants have had actual knowledge of the Defect since at least 2015, when a Technical Engineer with Ferrari S.p.A. testified in Hong Kong regarding the efficaciousness and engineering of the braking systems within the Class Vehicles at a criminal trial on the matter of wrongful death following a crash of a 2012 Ferrari 458 Spider. Defendants knew or should have known of the Defect from far earlier due to pre-production testing, failure mode analysis, and reports to authorized dealers and repair centers. Nevertheless, Defendants chose to omit information about the Brake Defect and not to disclose these problems to Plaintiff and the Class, so that they could continue to profit from the sale and lease of the Class Vehicles.  It was only in October of 2021 that Ferrari decided to conduct a safety recall of the Class Vehicles. Defendants have failed to conduct that recall despite setting December 21, 2021 as the Planned Dealer and Owner Notification Date. *See* Exhibit A.

4.     Despite Defendants' knowledge, Defendants omitted information regarding the Brake Defect from all advertising, promotion, or other contacts with Plaintiff and Class members prior to purchase. By knowingly failing to disclose the Brake Defect to consumers and by failing to correct the problem, Plaintiff and the Class purchased and leased vehicles of a lesser standard,

---

[1]   According to Ferrari North America, Inc., "[w]hen the quantity of brake fluid in the relevant reservoir decreases by 52% of the maximum reservoir level (so that a percentage equal to 48% is still in such reservoir) a message will appear on the vehicle's dashboard that reads as follows: 'Brake fluid level low, Go to dealer slowly'.  Additionally, a warning light will appear on the dashboard and an acoustic buzzer will sound." *See* Exhibit A, *Part 573 Recall Report 21V-833*, NHTSA, https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V833-4048.PDF (last accessed Dec. 16, 2021).

grade and quality represented; that do not meet ordinary and reasonable consumer expectations regarding the quality, durability, or value of the Class Vehicles; and are unfit for their intended purpose. Moreover, the Brake Defect seriously endangers drivers, passengers, and the general public. As one Ferrari enthusiast aptly stated:

> This appears to be a disaster waiting to happen. The consequences of even one occurrence could be nothing short of catastrophic. Imagine having his happen in a school zone while children are crossing. The Ferrari driver would be stereotyped into the "hot rodder" who negligently killed innocent children. Lives could be lost and a lifetime of achievement could be lost or tied up in years of litigation. Am I wrong to assume that Ferrari has not stepped up?[2]

5.      Plaintiff Rose brings this action on behalf of himself and all those similarly situated ("Class," "Class Members," "Consumers," "Owners") for Defendants' deceptive trade practices in violation of the consumer protection laws of Georgia and New Jersey.  Plaintiff seeks damages, attorney's fees and costs, punitive damages, and the repair of, replacement of, or refund of money paid to own or lease all Class Vehicle, and any other legal relief available for their claims. Should Plaintiff's demanded legal relief be unavailable or prove insufficient, Plaintiff seeks appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## II.   PARTIES

6.      Plaintiff Jeffrey Rose is a citizen of the state of Missouri, residing in St. Albans. Plaintiff Rose purchased a pre-owned 2018 model year 488GTB Ferrari on or about June 29, 2020 from an authorized Ferrari dealership located in Hinsdale, Illinois. Approximately one year later, on or about June 25, 2021, Plaintiff purchased a replacement pre-owned 2018 488 GTB Ferrari at an authorized Ferrari dealership in Roswell, Georgia.

---

[2]   SmokinV10, *Intermittent Brake failure on 458*, FERRARICHAT, Nov. 2, 2017, https://www.ferrarichat.com/forum/threads/intermittent-brake-failure-on-458.493926/page-3 (last accessed Dec. 16, 2021).

7.     Ferrari North America, Inc. is an automobile distributor incorporated in Delaware with its principal place of business at 250 Sylvan Avenue, Englewood Cliffs, New Jersey. Defendant is the exclusive distributor of new Ferrari automobiles, parts and accessories manufactured in Italy by Ferrari S.p.A. to retail dealers in the United States.  Defendant distributed, sold, serviced and/or warranted thousands of Class Vehicles, directly or indirectly, to Plaintiff and Class Members with the understanding and expectation that Class Vehicles would be sold, operated, and fit for their intended purpose across the country, including in New Jersey.

8.     Defendant Ferrari N.V. is a holding company based in Amsterdam, Netherlands with a registered office at Via Abertone Inferiore No. 4, Maranello, Italy and is the parent company of Ferrari North America, Inc.

9.     Defendant Ferrari S.p.A. is an automobile manufacturer located in Maranello, Italy. Ferrari S.p.A manufactured the Class Vehicles.

10.     Defendant Robert Bosch, LLC is a German multinational engineering electronics company with its United States headquarters located in Farmington Hills, Michigan. It is the world's largest supplier of automotive components.

11.     Defendant Robert Bosch GmbH, together with Robert Bosch, LLC ("Bosch"), is a German multinational engineering and technology company headquartered in Gerlingen, Germany. Bosch manufactured the defective brake systems installed on the Class Vehicles.

## III.    JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § l332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class Members and Defendants are citizens of different states.

13.     This Court has general and specific jurisdiction over Defendants because Ferrari and Bosch have sufficient minimum contacts with New Jersey and within the District of New Jersey to establish their presence in New Jersey, and certain material acts upon which this suit is based occurred in the District of New Jersey, including but not limited to the distribution of Defendants' defective product which was ultimately sold to and used by Plaintiff.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendants do substantial business throughout this District. Venue is also proper, because Defendants are subject to personal jurisdiction in this District.

## IV.   FACTUAL BACKGROUND

### A.     PLAINTIFF ROSE PURCHASED A DEFECTIVE CLASS VEHICLE AND EXPERIENCED THE BRAKE DEFECT

15.     Plaintiff Rose purchased a pre-owned 2018 488GTB Ferrari, VIN ZFF67NFA0E0196856, on June 29, 2020 from Continental Auto Sports, a certified Ferrari dealer, located in Hinsdale, Illinois ("Plaintiff Rose's 2020 Vehicle").

16.     On June 4, 2021, while running errands, Plaintiff Rose's 2020 Vehicle displayed a message on the left dash instrument panel that read: "brake fluid low - drive to dealer slowly." Plaintiff Rose drove the Ferrari slowly home and pulled into the driveway of his residence at approximately 10 miles per hour in first gear.  When he attempted to press the brake pedal nothing happened.  Plaintiff Rose's 2020 Vehicle continued moving forward into his yard with Plaintiff Rose continually trying to press the brakes but the brakes would not engage.  Plaintiff Rose frantically released his seat belt, opened the driver's side door and jumped out of the moving vehicle just before it entered the 20-foot deep pond behind his residence and sunk to the bottom. The aftermath is pictured below:





17.     Plaintiff Rose's 2020 Vehicle was taken to a salvage company and deemed a total loss by Plaintiff's automobile insurer, State Farm. On June 23, 2021, Plaintiff Rose settled his insurance claim with State Farm.

18.     On June 25, 2021, Plaintiff Rose then purchased a replacement pre-owned 2018 488GTB Ferrari, VIN ZFF79ALA9J0232226, at Ferrari Maserati Atlanta, a certified Ferrari dealer, located in Roswell, Georgia ("Plaintiff Rose's Class Vehicle") (Plaintiff Rose's 2020 Vehicle and Plaintiff Rose's Class Vehicle, together, "Plaintiff Rose's Vehicles").  Plaintiff Rose's Class Vehicle came with a three-year/unlimited-mileage factory warranty and a 24-month bumper-to-bumper extended warranty purchased by the original owner that expires on December 7, 2022.

19.     On July 17, 2021, Plaintiff Rose's Class Vehicle experienced a brake failure also due to the Brake Defect.  Just as before, Plaintiff Rose's Class Vehicle displayed a message on the left dash instrument panel that read: "brake fluid low - drive to dealer slowly."  The nearest Ferrari dealer is more than 300 miles from his home.  Plaintiff Rose drove home and by the time he reached his garage the brake pedal malfunctioned again, with the pedal going straight to the floor. Ferrari towed Plaintiff Rose's Class Vehicle to Continental Auto Sports where it underwent repairs.  The service record states:

> Confirmed customer's concern.  Removed trunk panels and found brake fluid resv completely empty.  Raised vehicle and checked for leaks.  No leaks found on any brake line or caliper.  Removed trunk assembly, disconnected vac line on booster and used a piece of rubber hose to verify brake fluid has leaked into booster. Opened report with Ferrari.  Replaced complete booster and master cylinder. [B]leed brakes and road test car.  Brake now operates correctly.

20.     On September 18, 2021, Plaintiff Rose submitted Complaint No. 11433534 to the National Highway Traffic Safety Administration ("NHTSA") describing his experiences.

21.     On November 2, 2021, Plaintiff Rose received an email from Ferrari North America advising him that:

Ferrari is investigating whether a problem exists in certain Model Year 2016-2018 vehicles… [that] are equipped with a braking system that could potentially leak brake fluid, which may lead to a total loss of braking capability, and result in an accident… [I]f a message appears on your dashboard, "Brake fluid level low, Go to dealer slowly", please pull off the road as soon as it is safe to do so.  Then contact Ferrari Roadside Assistance…  Your car will be taken to the nearest authorized Ferrari dealer and inspected free of charge.  If necessary, Ferrari will perform any necessary repairs to your vehicle for free.

22.    On November 9, 2021, Plaintiff Rose received a letter from Defendant Ferrari providing the same information as that set forth above in the November 2 email.

23.    Through its dealer agreements and other methods, Defendant Ferrari has control over the documentation and disclosures provided to consumers, such as window stickers and other legally required notices. As certified Ferrari dealers, the dealerships from which Plaintiff purchased his vehicle acted as Defendant Ferrari's agents regarding the disclosures and other representations made to consumers about the characteristics of his Class Vehicle, including Plaintiff's.

24.    Defendants failed to disclose that the Class Vehicles suffer from the Brake Defect which could result in decreased braking abilities or complete brake failure and omitted the existence of the Brake Defect from the materials provided to the general public and consumers of the Class Vehicles.  As a result of Defendants' omissions, at the time that Plaintiff purchased his vehicle, he believed that his Class Vehicle was safe and reliable.

25.    Prior to purchase, Plaintiff reviewed all paperwork provided by Ferrari and the dealerships, including warranty materials, and advertising and promotional materials. However, prior to the sale and despite Defendants' knowledge of the defect, Ferrari did not disclose the Brake Defect.  Further, prior to Plaintiff's purchases, Ferrari had not issued a recall for the defect. None of the information provided to Plaintiff at the time of purchase of his Class Vehicle informed him of the presence of the Brake Defect. Because of Defendants' omissions at the time of purchase

Plaintiff was not aware and was not informed that his Class Vehicle suffered from the Brake Defect.

26.     Defendants acted in bad faith because Defendants knew, at the time that it designed, tested, validated, marketed, sold and provided written warranties for the Class Vehicles to consumers that the Class Vehicles have the Brake Defect. Notwithstanding that knowledge, Defendants purposefully concealed and omitted the existence of the Brake Defect within the written warranties and elsewhere. Thus, any durational limits in its warranties are unconscionable and unenforceable.

27.     Plaintiff relied on the materials referenced above, and the omissions of Ferrari's agents, in that they reasonably expected that Defendants would disclose the existence of a dangerous defect like the Brake Defect to consumers.

28.     At no point prior to Plaintiff's purchase of his Class Vehicle did Defendants disclose that any Class Vehicle suffered from the Brake Defect, notwithstanding that Defendants knew or should have known of the Brake Defect prior to the date of Plaintiff's purchase of his Class Vehicle.  Ferrari should have disclosed that the Class Vehicles, including Plaintiff's vehicle, were dangerous because they were prone to leaking brake fluid, which may lead to partial or total loss of braking capability,  in its advertisements and promotional materials.

29.     Had Plaintiff or any other reasonable person known that the Class Vehicles suffered from the Brake Defect, he would not have purchased a Class Vehicle or would have paid less to do so.

**B.     FERRARI AND BOSCH KNEW OF THE BRAKE DEFECT BUT MISREPRESENTED AND/OR CONCEALED ITS EXISTENCE**

30.     Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiff and members of the Class the Brake Defect in the Class Vehicles even though Defendants knew or should have known of the Brake Defect in Class Vehicles.

31.     Knowledge and information regarding the Brake Defect was in the exclusive and superior possession of Defendants and their dealers. That information was not provided to Plaintiff and members of the Class. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, and consumer complaints made online and to the NHTSA, media attention when the Defect manifests, and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles and fraudulently concealed the Defect and safety risk from Plaintiff and members of the Class. Defendants knew, or should have known, that the Brake Defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiff and members of the Class before they purchased or leased Class Vehicles.

32.     Defendants have and continue to be under a legal obligation under federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

33.     Defendants knew that any defect potentially leading to loss of braking capability, such as the Brake Defect, presents a serious safety risk.

34.     Notwithstanding Defendants' exclusive and superior knowledge of the Brake Defect, Defendants failed to disclose the Defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the

Defect through and including the 2019 model years 488 GTB and 488 Spider. Further, Ferrari failed to warn consumers and thereby permitted resale of the Class Vehicles at artificially inflated prices in the secondary market. Defendants have intentionally concealed that the braking systems may fail and present a safety risk, rather than disclosing the Defect and risk to consumers, including Plaintiff, members of the Class, and the public.

## 1.    CONSUMER COMPLAINTS TO NHTSA

35.    The NHTSA provides a system for motor vehicle owners to report complaints relating to safety defects that pose a risk of accidents in vehicles manufactured or imported in the United States, including safety defects relating to brake malfunctions. The safety defect complaints are entered into the NHTSA consumer complaint automated database, which is accessible to manufacturers and are routinely reviewed by Ferrari soon after the submission of each complaint. NHTSA also provides these consumer complaints to the vehicle manufacturers directly, including Ferrari. Given the vast majority of owners of Class Vehicles are not aware of NHTSA and/or its reporting system, complaints received by NHTSA form only a small minority of the overall number of complaints which have been made to Ferrari directly and/or through its authorized dealerships, including through the form of warranty repairs.

36.    Below are a sampling of complaints made to the NHTSA:

Model/Year:         2010 Ferrari 458 Italia
NHTSA ID Number:    11195454
Incident Date:      December 29, 2018
Consumer Location:  San Jose, CA
VIN Number:         ZFF67NFA0A0****

A few occurrences of applying the brake, ***but the brake pedal barely moves further (hard brake feel) but the car does not slow down. Has occurred going forward at slow speeds***. However next brake application is normal. Perhaps issue with brake boost? [emphasis added]

■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■·■

Model/Year:         2018 Ferrari 488 GTB
NHTSA ID Number:    11433534
Incident Date:      June 4, 2021
Consumer Location:  Unknown
VIN Number:         ZFF79ALA2J0***

On 6/4/21, my 2018 Ferrari 488 GTB displayed a message in my left dash instrument panel prior to complete brake failure in my driveway that read "brake fluid low-drive to dealer slowly", that resulted in my Ferrari being totaled by state farm after I jumped out of the running and moving Ferrari onto my rear lawn between 10 to 15 miles per hour before it went into a pond behind my residence. Then, 6-weeks later the replacement 2018 Ferrari GTB vin#[xxx] I purchased from Ferrari of Atlanta displayed the same message in my left dash instrument panel that read "brake fliuid low-drive to dealer slowly before the brake pedal went completely to the floor as I was pulling into my garage. After having the replacment Ferrari towed into continental Ferrari it was determined that the brake fluid had leaked inside the brake booster that caused the brake failure on the replacement Ferrari. The first Ferrari was taken to a company and sold as salvage. The company name is copart and their telephone number is (314) 291-8400. None of the Ferrari service departments or sales departments that I contacted had any record or knowledge of the brake failure problems that I experienced within a 6-week period on 2 separate ferrai 488 GTB's. I could have been trapped inside my Ferrari that went into the pond behind my residence and possibly killed. I could also have been injured or killed along with other motorists in my replacment Ferrari that had the same brake failure issue just 6-weeks later if I was unable to get the replacement Ferrari home and safely inside ny garage before the brakes completely failed a second time. I don't understand why Ferrari has the message "brake fluid low-drive to dealer slowly" display" that gives drivers a false sense of security that the brakes will continue to work properly until you drive to the dealer. That's a deadly warning and major safety concern to me. My cell number is [xxx] and I live in the St. Louis area. Please call me! Information redacted pursuant to the freedom of information act (FOIA), 5 U.S.C. 552(b)(6).

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

Model/Year:         2018 Ferrari 488 Spider
NHTSA ID Number:    11435451
Incident Date:      September 7, 2021
Consumer Location:  Vero Beach, FL
VIN Number:         ZFF80AMA0J0****

On 07 September 2021, I had been driving my 2018 Ferrari 488 Spider for 8 to 10 miles when the car suddenly displayed the following message "Brake Fluid Low, Go to Dealer Slowly". (note: Dealer is 2 hours away at 60 mph). As I slowed the car from approximately 45 mph, the brakes felt minimal but with down-shifting and minimal brakes I was able to slow the car. I attempted to limp home at 5 to 10 mph however within 3 miles or so the brakes failed completely. With the pedal to the

floor there was absolutely no effect on the vehicle. It was fortunate that I was able to slow the car prior to complete failure and did not hit anything or anyone. Once the brakes failed completely, I did end up running through a stop sign before I could pull off the road into a parking lot and only stopped the car by rolling into an uphill parking spot and hitting the concrete parking barrier with the tires. I found it was necessary to turn the car off in order to keep it from rolling backwards. The car does not have a classic emergency brake but rather an electronic hold function. When trying to activate this function to keep the car from rolling backwards the car displayed the following message (as best I can remember) "Depress Brake Pedal to Activate Hold". However, with the brake pedal fully depressed, the function would not activate even though it worked fine prior to the brake failure (and subsequent to repair). The car was towed to the dealer and repaired under warranty. The service manager reported that the Master Cylinder leaked into the vacuum booster. I had requested that the failed parts be returned to me however the service manager advised me that failed parts replaced under warranty are returned to Ferrari.

37.    Federal law requires automakers like Ferrari to be in close contact with NHTSA regarding potential defects. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Ferrari monitors NHTSA databases for consumer complaints regarding their automobiles as part of their obligation to identify potential defects in their vehicles, such as the Brake Defect.

38.    From its monitoring of the NHTSA databases, as well as their monitoring of complaints made on internet forums and to certified dealerships, Ferrari knew or should have known of the Brake Defect complaints lodged, such as those quoted above. However, Ferrari failed to act on that knowledge by warning Class members.

### 2.    Online Consumer Complaints and Reports to Ferrari Authorized Dealers and Repair Centers

39.    Defendants know about the Defect due to consumer complaints made online and internally to their exclusive network of dealers, which Defendants monitor as part of a continuous obligation to identify potential defects in their vehicles.

40.    Defendants' deceptive acts, misrepresentations and/or omissions regarding the Brake Defect create a safety risk for drivers and occupants of the Class Vehicles as well as

members of the public who may be involved in accidents with Class Vehicles that experience a

the Brake Defect while driving. The reasonable expectation that the Class Vehicles are safe and

reliable to drive (and ride in) is and was material to Plaintiff and members of the Class at all

relevant times.

41.     Defendants knew about the Brake Defect through monitoring complaints

identifying the Defect, which were posted before Plaintiff purchased or leased his Class Vehicle.

The following constitutes a sampling of complaints concerning consumers' experiences with the

Class Vehicles on the internet, including, but not limited to, postings appearing in online forums,

such as Ferrari Chat, regarding the Brake Defect in the Class Vehicles:

42.     From *Intermittent   Brake   Failure   on   458*, FERRARI   CHAT,

https://www.ferrarichat.com/forum/threads/intermittent-brake-failure-on-458.493926/   (last

accessed December 13, 2021) (emphasis added):

> Date:          July 16, 2015
> User:          eberro
> Comment:
>
> I had driven my 458 for 30 minutes and the car was working perfectly . I came to a
> 90 degree turn, I was not traveling quickly but had to move my foot from gas to
> brake quickly. The pedal stopped at its usual pedal height , but had little feel (hard)
> and ***there was zero stopping power in the brakes and the car just kept traveling at
> its same speed***. Totally terrifying!! Have others experienced this on the 458 before.
> What do people think it is ? Is it brake booster valve failure triggered by the smaller
> amount of time taken to go from gas to brake? That would suggest one would have
> problems if you were in an emergency stop situation. I am confused but hope others
> have solved this problem. [emphasis added].

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

> Date:          July 19, 2015
> User:          andrewecd
> Comment:
>
> A friend had same thing happen. ***Approaching roundabout and lifted to apply
> brake. Car kept accelerating. No brakes (brake pedal hard). In these few seconds***

14

***he had to swerve like a maniac to avoid colliding with other cars***. He was about to ram it into some parked cars to avoid the next intersection when the throttle shut and brakes worked again as normal. Before anyone asks, he had no time to turn car off and no, the floor mat was not stuck on top of the pedal etc. He pulled over, turned car off, while being abused by everyone and emptied his pants. Turned car back on. Acted as normal again. So reluctantly drove car home very slowly and rang F to come and pick it up. To cut a long story short, F said nothing wrong with car. I think they offered to change some parts but as they could not identify ANY problem they would be just guessing. He refused to ever drive that car again or any other 458 they offered as exchange, as it could have the same problem. Car was resold by F and is back on the road! Ticking time bomb. He will never buy another F car again. One of our discussions, also discussed with the dealer, after this was imagine what would have happened if he had hit another car and everyone was killed. From all witness accounts he would have been seen as this crazy F car idiot driving like a lunatic who caused the crash. Police give car to F for testing. F say nothing wrong with car etc. So he goes to his grave as causing the crash. Or, crashes car and "explains" to police the car accelerator just jammed on..."sure mate, sure". Again F examines car and says throttle is just fine... He is not on F chat and when I told him about another 458 with same problem, he asked me to tell his story. He may sign up and post to confirm or add to the above. I have heard of 360's and 430's revving uncontrollably too. These cases are documented here on F chat. So far my 430 has never done this. [emphasis added].

**· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·**

Date:       July 21, 2015
User:       eberro
Comment:

I have spoken to a number of 458 owners who this has happened to. Basically, the brakes work normally 99% of the time, ***but for no apparent reason, the brakes sometimes just lose their power when applied***. The pedal stops in its normal place, but the brakes create almost no retardation of the vehicle and because there is little power the ABS is not actuated because you can't lock the brakes no matter how hard you press the pedal. I have read several times that people think and sometimes they even say Ferrari have stated that it is the failure of the Brake Booster Valves. Is it possible to check for that, bearing in mind the fault is intermittent? Is that a mechanical or electrical problem. Are those valves controlled by the ECU or by vacuum pressure from the engine? If you plug in a diagnostic machine, will it show you that there have been problems? Thanks for all your replies. [emphasis added].

**· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·**

Date:       July 21, 2015
User:       Zaius
Comment:

*This problem seems to be more common on the 458 than previously acknowledged*. [emphasis added].

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

Date:         October 27, 2017
User:         lee2468
Comment:

I also experienced this same brake failure in my 458 about 1.5 years ago - cars had been driven for 1 hour so brakes fully up to temperature but when coming off a motorway slip road and up to a clear roundabout quite fast *I suddenly found without warning a hard pedal and zero stopping power.* I managed to drop down a couple of gears and luckily nothing was coming around the roundabout at the time. Was certainly scary as *I also had my son in the car so I immediately sent my car back to Ferrari main dealer and they checked everything and road tested the car for 70 miles but found no faults whatsoever with the braking system but did replace the brake booster valve as a precautionary measure*. I had no further issues whatsoever from then on for another 1.5 years. I had read that this brake booster was a known problem but my Ferrari main dealer found no issues with the booster valve. My car was sold a few weeks ago and I was obviously concerned to hear that the new owner reported a few weeks into his ownership that he suddenly had the same brake issue so it certainly appears to be a very rare/intermittent but obviously concerning issue - the car was still under Ferrari warranty so he was going to get them to check it out - my only worry is that after reading this post and from my own experience Ferrari may not find any fault! After reading these posts and from my experience I personally think that it could be more of an ABS related issue as it felt the same as when braking hard on snow - hard pedal except in this case there is no ABS pulsing of the brake pedal whatsoever. Maybe its only occurring in a very rare circumstance whereby the ABS or sensors get confused and the ABS does not function as intended. Its all rather strange to hear that so many 458 owners have reported similar braking issues so it certainly should be something that Ferrari needs to look into much deeper. I can see there are now other reports of 458 brakes failing and people having been killed and the various engineers have reported no brake faults found just as this scenario had been predicted at the beginning of this post a few years back: -

https://www.thesun.co.uk/news/2049059/british-banker-jailed-for-mowing-down-and-killing-carpark-guard-with-his-400000-ferrari/
http://uk.reuters.com/article/uk-hongkong-banker-prison/ex-deutsche-banker-jailed-for-killing-security-guard-in-ferrari-crash-idUKKCN12P0AU
http://www.scmp.com/news/hong-kong/law-crime/article/2102488/appeal-granted-british-banker-jailed-over-ferrari-crash

[emphasis added].

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

16

Date:          November 2, 2017
User:          daflk
Comment:

***Happened once to me but I had major brake fade prior to that which was diagnosed to be brake fluids and a full flush and top up appeared to solve it.*** Dealer insisted brake booster didn't fail. My brakes are still occasionally too soft and takes too much travel but at least brake hasn't suddenly hardened after series of hard braking. Sent from my SM-G9350 using Tapatalk. [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:          November 2, 2017
User:          smokinV10
Comment:

This appears to be a disaster waiting to happen. ***The consequences of even one occurrence could be nothing short of catastrophic. Imagine having his happen in a school zone while children are crossing***. The Ferrari driver would be stereotyped into the "hot rodder" who negligently killed innocent children. Lives could be lost and a lifetime of achievement could be lost or tied up in years of litigation. Am I wrong to assume that Ferrari has not stepped up? [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:          November 2, 2017
User:          cityvibe
Comment:

I had the same problem on my 2012 458. Sometimes, albeit rarely, after driving the car normally I would come to apply the brakes and the pedal was hard, as if the brake booster was not functioning properly. It's scary as hell if you're coming off a freeway off ramp fast and the pedal is hard and the car doesn't slow down like it's supposed to. ***I took it to the dealer and they replaced the brake booster, actuator, and master cylinder. <u>This is a problem Ferrari is very well aware of</u> and it affects a lot of 458's out there. Be very careful***. [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:          November 18, 2018
User:          cityvibe
Comment:
If you search the threads there are way too many people who have experienced this problem. ***I personally almost died in my 458 because of this issue. Is the 458 a widowmaker***? [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:          April 6, 2019

User:          eberro
Comment:

I had failure of the brakes (or at least it felt that way) on my way to work, on a road I had driven 1000 times. The car had been driven for 30 minutes, very gently and was travelling at 50 mph when the brake pedal went rock solid and there was no noticeable deceleration. ***The car rolled for 100 metres until it crashed. I had a lot of external investigation done because Ferrari refused to accept that it could ever happen (yet it did) and obviously blamed driver error***. (I had driven for 30 years without an incident) The conclusion was that the brake booster valve failed. It appears to happen more than anyone would like to admit. [emphasis added].

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

Date:          April 6, 2019
User:          eberro
Comment:

Something tragic happened when the booster failed on my 458. Ferrari came in force (engineers and. Lawyers) and did all they could to place the blame on me even though all the evidence pointed to a failure. They said it could never happen, and yet it did. With a disastrous ending. I had failure of the brakes (or at least it felt that way) on my way to work, on a road I had driven 1000 times. The car had been driven for 30 minutes, very gently and was travelling at 50 mph when the brake pedal went rock solid and there was no noticeable deceleration. The car rolled for 100 metres until it crashed. I had a lot of external investigation done because Ferrari refused to accept that it could ever happen (yet it did) and obviously blamed driver error. (I had driven for 30 years without an incident) The conclusion was that the brake booster valve failed. It appears to happen more than anyone would like to admit.

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

Date:          August 6, 2020
User:          Tamahal
Comment:

Oh ya, I've seen that show. This break failure issue happen to me when I totaled my 430. I had a 2009 F430, which came standard with CCB. One early morning I was coming around a curve in front of my house. It's a very quiet secluded road with hardly any traffic, good visibility, and smooth like butter. I always drive in RACE MODE, but for some reason I was in sport mode that day. Anyways the car slid, I tried to catch it but it caught facing the ditch beside the road. I tired to break and no breaking at all, no sensation of the car slowing down. I just assumed the CCB were cold and they didn't catch. Car ended up in the ditch and totaled. I chalked it up to cold tired and CCB, plus the car being in sport mode didn't give me time to catch the slide myself. But the breaks were nonexistent. I always wondered if it was truly cold CCB??

18

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:          August 6, 2020
User:          PTG1
Comment:

My previous 458 spider seemed to have an issue with a lack of bite on the breaks and a number of times I felt I have been luck to stop but, eventually after really standing on them they did work just not very well, my new one seems to work as they should. I'm not sure if this is the same issue as I did have some breaks and this seems to be about non existent breaks. I hope this does not turn into a wide spread issue as it is catastrophic for all those involved and of course so unsafe

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:          August 6, 2020
User:          TUTTSF
Comment:

Had this happen to me last weekend while driving Angeles Crest Hwy. I had driven spiritedly all the way up to Newcomb's Ranch no issues, on my way down the mountain my brake pedal was short and hard as a rock with little stopping power. Stopped the car turned it off waited 5 min drove the car and no change all the way down the mountain. Had to do a two foot leg press to get the car to brake. I have not driven the car since and thought I need to bleed the brakes as I had just done a 2000 mile road trip through the Pacific Northwest and one track session (about 9 hard laps) I will drive the car tomorrow before I bleed the brakes to see if it is still stiff then change the fluid and test drive it and follow up in this thread. 2013 458 Spider stock size wheels/tires headers Fabspeed / iPE exhaust + 200 cell cats + tune(open flash) Driven in Race mode (did not know there was a sport mode ; )

43.    From *Need advice on 458 braking issue, or lack there off…,* FERRARI CHAT,

https://www.ferrarichat.com/forum/threads/need-advice-on-458-braking-issue-or-lack-there-

of.576984/ (last accessed Dec. 13, 2021) (emphasis added):

Date:          May 28, 2018
User:          1cerberus4u
Comment:
Hey all; 2013 458, 5k miles on it. Last year I had an issue with loss of brake pedal while doing parade laps at Daytona. Brought it into the dealer back home last fall and they said they reset a bunch of computer codes. Put it away for the winter and forgot about it. Just brought the car out for the summer and was doing some "spirited" driving, when I came up on some slower traffic and needed to brake a bit more than typical slow down in a standard daily driver. Pushed hard on brakes, and the car did not slow down well…. In fact slowed down less than my daily driver.

Also, when I first put the key in the ignition and am pressing the brake pedal a bit, it sinks noticeably. Pump it up and it seems ok (although overall the pedal seems soft..) So I am thinking its something on the power assist? Any thoughts? Carbon rotors, stock pads Thanks!

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Date:       May 29, 2018
User:       graphicdisorder
Comment:

IMO there are some issues with 458 and 488 brakes that are not being reported and/or aren't consistent. My 488 brakes failed me and I punted the car, every time I tell the story someone send me a message or email or something with a similar story and ***my guess is they don't want it public since their car would be harder to sell***. [emphasis added].

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Date:       May 4, 2019
User:       eberro
Comment:

***Did you ever solve this problem? I lost my brakes on my Spider. Pedal went rock solid. Car would not slow. Crash occurred with awful result***. Brake booster failure. Seems to happen a lot. [emphasis added].

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Date:       August 22, 2020
User:       Anthony Bohana
Comment:

***Same thing happened to me in my 458 Spider ... this was the result https://www.bathchronicle.co.uk/news/bath-news/ferrari-worth-200000-crashes-garden-1021566 Ferrari deny and deny it ... BUT they know the truth***, I actually think myself lucky some poor guy I spoke to had the same problem but killed someone in Hong Kong .. he served 2 years in prison for it .. yet he is adamant the brakes failed and he could not stop the car .. I 100% believe him after it happened to me. [emphasis added].

44.     From          *458          brakes,*          CLUB          SCUDERIA,

https://www.clubscuderia.co.uk/forum/showthread.php?59775-458-brakes (last accessed Dec. 13,

2021) (emphasis added):

Date:       August 29, 2018
User:       Miss Darkside

20

Comment:

Our 458 Italia was serviced in March and according to the service book had the brake fluid changed. We then had a spirited drive around North Yorkshire where the brakes seemed fine and the car has only been out for a few local runs since, the last couple of times hubby said it felt like the brakes weren't very responsive. Car went in for a new windscreen and we asked Stratstone to have a look at the brakes while it was in. They said the brakes seemed fine but they had performed a "bedding in procedure" which should have them at optimal performance. Last weekend hubby took the car out and found that there was loads of travel before the brakes bit and when starting the car he had to push the brake pedal down so low that he accidentally caught the accelerator. He says it feels like there's no fluid in the reservoir. There's no sign of any fluids on the garage floor to account for a leak.

We are off to Italy a week on Saturday and are rather concerned. Waiting for a call from Stratstone as we think the brakes definitely need looking at (again!) but what do you guys think? And if Stratstone can't help us before Italy, what independent specialist in the North West of England would you recommend?

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Date:          August 29, 2018
User:          MWStewart
Comment:

*There was a problem with 458 master cylinders which led to a lack of braking pressure and symptoms exactly you describe.* There are a few threads on 458 brake issues e.g. https://www.ferrarichat.com/forum/th...on-458.493926/ That thread doesn't mention the root cause, but it's most likely the master cylinder issue. I really recommend your car is booked in for a check ASAP. N.B. I'd like to think Stratstone didn't use the pedal to bleed (i.e. pump) the brakes when they changed the fluid - this tends to flip seals and cause the same thing. [emphasis added].

45.    From        *458        brake        failure*,        Ferrari        Chat,

https://www.ferrarichat.com/forum/threads/458-brake-failure.556982/ (last accessed Dec. 13,

2021) (emphasis added):

Date:          July 23, 2017
User:          ATran
Comment:

*Have anyone have information on the 458 brake failure? I have this happen to me twice. I was driving on a mountain road, about 1 hr into spirited driving the brake just failed.* I stepped on the brake and nothing happen. I had to use engine braking and stepped really hard in the brake to slow it down. I lost all the confidence

in the car after that. Anyone know what the issue is and how to fix it? I drove slowly for 10 minutes then the brake came back normal. [emphasis added].

●▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬●

Date:         July 23, 2017
User:         Atran
Comment:

Thanks for all the advice. ***I'm scheduling service and inspection with Ferrari dealership***. Will what they can find. I found a few links on similar issues when I google it but don't know how real they are. I have a black 2011 with 8k miles on it. Thanks! [emphasis added].

●▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬●

Date:         July 24, 2017
User:         TheMayor
Comment:

***To me this sounds like the brake booster or master cylinder problem***. This is a fixable problem. IMO, if this happened to me twice I'd be towing it ASAP to the repair shop. [emphasis added].

●▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬●

Date:         July 26, 2017
User:         andrewecd
Comment:

***My friend had same thing going into an intersection in black 458. Narrowly avoided a massive accident by swerving all over the intersection. Brake pedal was rock hard then later brakes worked fine again? Ferrari said nothing wrong with the brakes***. He did not accept their verdict. His life (and others) were nearly ended that day so he refused to drive it ever again. Sold car back to F and bought a McLaren. ***There are several reports of 458's with brake problems, including now that 488 in Portugal***. Never heard of any such problems with 360 or 430, only 458?? Am in the market for a 458 but this issue is of real concern to me. If you have any more news on the outcome of your brake problem please let us know. [emphasis added].

●▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬●

Date:         July 27, 2017
User:         exoticcardreamer
Comment:

This happened recently. his brakes failed. He had them inspected the day before. ***it is currently under investigation***.

https://www.instagram.com/p/BWDW4XaBbv4/?taken-by=mazer327

[emphasis added].

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

Date:       April 5, 2019
User:       eberro
Comment:

Yes I had the same thing happen to me on a 458. The brake pedal went solid when I pressed it and ever increasing amounts of pressure would barely slow the car. *Ferrari refused to admit there was anything wrong, so I hired an external engineer who worked at the highest level of the car industry. Hi hired a 458 and replicated Brake Booster valve failure and got exactly the same results as me . Ferrari claim the brake booster can't fail on the 458 but it seems to fail too often for comfort. I know for certain people have lost their lives as a result of this failure*. With the booster, which multiplies your pedal force by at least 6 times at the callipers, you would need to press at least 6 times harder than you expect to get the normal braking force. On the road, when you are taken by surprise by the failure , you just can't do that . Trust me. I know. [emphasis added].

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

Date:       April 5, 2019
User:       Melvook
Comment:

I had brake failure on the Hockenheim circuit after 10 rounds … Every next round at the same hairpin, after 50 meters the brakes were working perfectly again. 8 more rounds … Techs said it's a ABS Ecu fault.

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

Date:       April 11, 2019
User:       Viper830tt
Comment:

Also subscribed. Looking at getting a 458 in a year, but this finding is concerning. *If this is a real defect, its the worst type you can have because it seems to be unpredictable and the manufacturer is reluctant to investigate it seriously.* Consider how many incidents and complaints there are and how many client-miles driven out there for this vehicle. If this happened in a Ford pickup, it would be far more visible. Seems like a brake booster wouldnt be the most painful recall for manufacturer (beats swapping the entire frame on my old truck!) Sent from my SM-N920V using FerrariChat.com mobile app [emphasis added].

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

23

Date:        May 4, 2019
User:        eberro
Comment:

I had the same problem with my Spider with terrible consequences. Pedal went solid. Lost almost all braking. Certainly in an emergency situation it felt like there was no brakes, even if what happened was a loss of the Brake Booster. ***Ferrari claims it can never happen. It seems to happen way too often***. [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:        May 4, 2019
User:        eberro
Comment:

Yep...When my Spider crashed and Ferrari were brought in ***(there was a Court case)***, they claimed it was impossible for this to fail.....Yet it did, and it does for many others too. [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:        May 24, 2019
User:        graphicdisorder:
Comment:

***It's happening on 488's too. Mine did it.*** [emphasis added].

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Date:        May 25, 2019
User:        LBP488
Comment:

***There has been several reports on the 488 indeed, I suppose the defect was simply carried over from the 458***. What is disturbing is that's it a very serious issue, but at the same time statistically rare enough to be neglected by Ferrari - which is frustrating. I have been lucky (or not unlucky...) so far with my 488, and I hope it will remain the case... and that the F8 does not have the problem. [emphasis added].

46.    From    *458    brake    fade    then    hard    pedal!*,    Ferrari    Chat,

https://www.ferrarichat.com/forum/threads/458-brake-fade-then-hard-pedal.543539/    (last

accessed Dec. 13, 2021) (emphasis added):

Date:        January 26, 2017
User:        dalfk
Comment:

24

Hi, my brakes dont work very well normally (long time to brake generally, but also I experience brake fade prior to a sudden, complete failure (brake pedal hardens completely with full force). Very scary. Anyone know what solutions?? Sent from my SM-G9350 using Tapatalk

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

Date:        February 18, 2017
User:        captaind
Comment:

I had this a few months ago. Was never really happy with the brakes. Dealer just kept telling me the ceramic brakes need to be up to temperature to work but I kept thinking if a child ran out in front of me at 30mph I probably wouldn't stop. Then one night on a straight dry bit of road I travel every day I braked from 70mph and the brake pedal went hard and 'wooden' with no stopping force. ***I went straight through a roundabout wrecking two wheels and tyres in the process. I complained to Ferrari who advised me the brake pads had never been 'bedded in' which is a procedure requiring heat cycling the brakes by hard braking***. Nothing in the owners manual about it. If you don't do this the brake discs look 'glazed' and don't work. Was told only solution was to replace brake pads and heat cycle. Ferrari paid for new pads and wheels, I had to pay for fitting and new tyres but really not happy. Now I have the car back the brakes are a bit better but my confidence is shot. Ferrari know there is an issue with these but wont admit it. I got a real fright and in a different time and place I wouldn't have been here to write this. [emphasis added].

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

Date:        April 5, 2019
User:        eberro
Comment:

I had the pedal go completely hard on my 458 and i lost what appeared at the time, all, or most of my braking. Hard pedals normally mean brake booster valve failure and it seems to happen a lot on the 458. This happened to a man in Hong Kong on his commute to work and someone lost their life. Ferrari came to court and stated apparently, that this failure could never happen and yet it seems to happen very often. The booster provides about 6 times force multiplier on the pedal force, so when you press the brakes and they go hard, to get the same stopping force at the calipers, you need to press 6 times harder. A 458 makes a minimum distance stop (before the ABS kicks in) on dry tarmac with only 25kg of force on the pedal. So, if your normal pressure would be 10kg to stop the car and the booster fails on the road, you would need 60 Kg to get the same effect. That is 2.5 times more pressure than you would need to get the car to stop in the shortest distance should everything be working. When you don't have time to think, that does not happen. Normal drivers do not react like that, they tend to gradually press harder and harder until the accident happens.

3.    **Highly Publicized Manifestations of the Defect in the Media and Litigation**

47.    Defendants are also aware of the Defect from highly publicized media coverage and litigation resulting from the partial or total loss of braking capability in the Class Vehicles. Below are several examples:

48.    On April 8, 2018, a highly publicized crash occurred of Ferrari 488 GTB at Autódromo Fernanda Pires da Silva in Estoril, Cascais, Portugal. While participating at the track, the vehicle reportedly suffered catastrophic brake failure at one of the circuit's high-speed sectors and slammed into a crash barrier. Footage shows that as another vehicle on track begins to brake, the 488 GTB continues to enter the corner at full speed with the driver scrambling into the off-track area to avoid other cars.[3]

49.    Multiple cases have arisen of crashes involving the Class Vehicles, with claims that the brakes failed resulting in loss of control over the Class Vehicle. For example, on June 9, 2015, Robert Ebert, the former head of equities for Asia Pacific at Deutsche Bank, argued there was a "catastrophic failure of the brakes" when his 2012 Ferrari 458 Spider hit and killed Ku Lap-chi, 53, at the entrance to a car park.[4] Ebert was driving from his home in the Peak district of Hong

---

[3]   This story was picked up by multiple news sources: Brad Anderson, *Ferrari 488 Wrecked In High Speed Crash At Estoril Circuit*, CARSCOOPS, April 10, 2017 https://www.carscoops.com/2017/04/ferrari-488-wrecked-in-high-speed-crash/#more (last accessed Dec. 16, 2021); James Fossdyke, *Ferrari Driver's Escape In Sickening Crash Shows Just How Safe Prancing Horses Are*, SUPERUNLEADED, April 12, 2017 http://superunleaded.com/sickening-ferrari-crash-shows-best-good-brakes/23347/ (last accessed Dec. 16, 2021; Kyle Cheromcha, W*atch Separate Crashes Claim Two Ferrari 488s This Weekend*, THEDRIVE, April 9, 2017, https://www.thedrive.com/news/9132/watch-separate-crashes-claim-two-ferrari-488s-this-weekend (last accessed Dec. 16, 2021).

[4]   *Bank executive arrested after wayward Ferrari kills guard in TST*, EJINSIGHT, June 10, 2015, https://www.ejinsight.com/eji/article/id/1073304/20150610-bank-executive-arrested-after-

Kong to his office at the International Commerce Centre on the day of the accident. Ferrari was fully aware of the case as Mr. Martino Casolari, a Technical Engineer from Ferrari S.p.A. testified at the trial of Robert Ebert.

50.     Upon learning of a death caused by an alleged "catastrophic failure of the brakes," Ferrari was obligated to conduct a full and in-depth investigation into the claims to determine the truth of the allegations. Any failure by Ferrari to conduct an investigation would have been willfully blind and/or reckless to serious allegations that threaten the lives and safety of the Class and the general public. Indeed, the vehicle that Robert Ebert was driving, a 2012 Ferrari 458 Spider, is a model that is within the class of vehicles at issue in this Action. That Ferrari sent one of its Technical Engineers to testify, is evidence that Ferrari knew or should have known of the Defect in mid-2015.

51.     Nor was this the last accident involving a Class Vehicle and brake failure. On January 17, 2020, Carl Hartly of Swadlincote, Derbyshire, England, crashed on a roundabout in Sheffield, England. Carl Hartley informed police that his brakes failed, a picture of the crash is included below.[5]

---

wayward-ferrari-kills-guard-in-tst (last accessed Dec. 16, 2021); Chris Lau, *Brakes on Ferrari that fatally hit security guard worked fine, Hong Kong court hears*, SOUTH CHINA MORNING POST, July 27, 2016, https://www.scmp.com/news/hong-kong/law-crime/article/1995539/brakes-ferrari-fatally-hit-security-guard-worked-fine-hong (last accessed Dec. 16, 2021).

[5] Will Taylor, *Millionaire supercar dealer spared jail after £180,000 Ferrari 'roundabout racing' crash*, YAHOO! NEWS, Jan. 17, 2020, https://www.yahoo.com/now/millionaire-supercars-crash-sheffield-115526214.html (last accessed Dec. 16, 2021).



52.     Another example, on June 10, 2021, a Ferrari 458 Italia was destroyed after crashing at the Circuito de Jarama near Madrid, Spain. Following a high-speed turn, the vehicle's braking system failed and resulted in a total loss of braking capability. The incident was highly publicized and pictured below.



53.     Likewise on January 6, 2018, a Ferrari 458 Spider lost control of its braking capability and crashed into the front garden of a home in Bath, England. The vehicle was worth approximately £200,000. According to the owner of the house, who was woken by the sound of the crash, the driver said that he lost control of the vehicle, pictured below. "My husband and son were awake and heard the crash," she told the Chronicle. "It woke me up and I ran straight down, checked the driver was ok, phoned police and made driver a cup of tea."[6]



54.     Domestic litigation that has directly implicated Defendants has also ensued that should have put Defendants on notice of the Defect. For example, in the fall of 2012, James Lee and his wife, Tan Siok Yin, left Singapore to vacation in Las Vegas. Before leaving, the couple decided they wanted to drive high performance vehicles at high speeds while vacationing at a

---

[6] Andrew Baber, *Ferrari worth £200,000 crashes into garden of Bath home after driver 'lost control'*, Bath Chronicle, Jan. 6, 2018, https://www.bathchronicle.co.uk/news/bath-news/ferrari-worth-200000-crashes-garden-1021566 (last accessed Dec. 16, 2021).

speedway. The pair decided to rent a 2012 Ferarri 458 Italia, and they were paired with a professional driving instructor, Brandon Grade.

55.     After entering the vehicle, Lee started the engine, accelerated towards the track's first turn and sped onto the second turn. As the turn approached, Lee hit the brakes. But, the brakes failed. Fortunately, the 2012 Ferrari 458 Italia was also equipped with a passenger-side brake pedal. Grade, the professional driver, hit the brakes. But, the brakes failed again. The wall drew closer. The vehicle crashed and Lee was severely injured. On August 8, 2013, Lee and his wife commenced a negligence action against the professional driver and the rental company for the Ferrari. *See* S*un v. Dreamdealers USA, LLC*, 2:13-CV-1605-JCM-VCF (D. Nev.). Ferrari is likely to have learned of this action through the rental company or monitoring of legal actions under sound practices of liability monitoring.

### 4.      Ferrari and Bosch Monitored the Above Information and Knew of the Existence of the Brake Defect

56.     As evidenced by, among other things, the complaints submitted to NHTSA and elsewhere, Defendants has been aware of the Brake Defect years before it issued recalls. Further Defendants knew that the Defect poses a serious safety risk to Class Members and the public at large, and the associated costly repair charges to the Class Vehicles.

57.     Defendants monitored and saw the above quoted consumer complaints for three reasons:

> a.      First, pursuant to the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30118, manufacturers are required to monitor reports submitted to NHTSA and report information regarding internal customer complaints and warranty

claims to NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects.

b.   Second, car manufacturers like Defendants know that NHTSA is a repository for complaints, and as such can provide an early warning mechanism for responding to design or manufacturing defects that pose a safety hazard. Hence, as courts have found, it is entirely reasonable to assume that car manufacturers closely monitor and analyze complaints made online and to NHTSA—particularly when it entails safety hazard.

c.   Third, online reputation management (commonly called "ORM" for short) is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation." [7] The growth of the internet and social media and the advent of reputation management companies have led to ORM becoming an integral part of many companies' marketing efforts. Defendants regularly monitored consumer complaints in connection with its ORM activities because candid

---

[7]   Moryt Milo, *Great Businesses Lean Forward, Respond Fast*, SILICON VALLEY BUSINESS JOURNAL (September 5, 2013), http://www.bizjournals.com/sanjose/print-edition/2013/05/17/great-businesses-lean-forward-respond.html

comments from Ferrari owners provide valuable data regarding quality control issues and customer satisfaction.

58.     Moreover, Ferrari in particular is a high-end brand. As such, every touch point of the brand has an impact on customer perception, making any negative interaction a potential reputational threat. Luxury products and services are heavily reliant on experiences.  As stated by Andrew Nahum, a curator of Ferrari: Under the Skin, an exhibition at the Design Museum, in London, England, "the branding and the reputation comes from the quality of the product…they can do that because the quality of the product and the continuity and history of it. It's a super-car like no other, really."

59.     According to its May 21, 2020 prospectus, "Ferrari is among the world's leading luxury brands focused on the design, engineering, production and sale of the world's most recognizable luxury performance sports cars. The Ferrari brand symbolizes exclusivity, innovation, state-of-the-art sporting performance and Italian design and engineering heritage." Moreover, "Whilst broadening its product portfolio to target a larger customer base, the Group continues to pursue a low volume production strategy in order to maintain a reputation of exclusivity and scarcity among purchasers of its cars and carefully manages its production volumes and delivery waiting lists to promote this reputation."[8]

60.     Nevertheless, Ferrari knowingly, intentionally, and/or recklessly continued to manufacture and sell the Class Vehicles while omitting that their braking systems are defective and dangerous and without remedying the Brake Defect.

---

[8]     *May 21, 2020 Prospectus*, FERRARI N.V., available at https://corporate.ferrari.com/sites/ferrari15ipo/files/drs_-_ferrari_n.v._-_prospectus_21_may_2020_final_approved_by_cbi_5.pdf (last accessed Dec. 16, 2021).

61.     Similarly, Bosch knowingly, intentionally, and/or recklessly continued to manufacture and repair components and braking systems in the Class Vehicles while omitting that their braking systems are defective and dangerous without remedying the Brake Defect.

62.     Ferrari's safety recall to date has failed to remedy the Brake Defect and Plaintiff and Class members continue to be damaged by the ongoing devaluation of his Class Vehicle.

63.     Despite its knowledge relating to the Brake Defect in the Class Vehicle's defective braking system and its clear safety implications, Ferrari took no action to alert Plaintiff or the Class members of the Brake Defect in the Class Vehicles until approximately November 2021. Ferrari declined to provide notice of the Brake Defect through point-of-sale communications, alerts, direct communications which identified Plaintiff and Class members by state vehicle registry databases, or through print or electronic media. Instead, Ferrari omitted mention of and/or concealed the Brake Defect from unwitting consumers who unknowingly purchased and continued to operate the affected Class Vehicles, and are at increased risk for crashes.

## C.     THE INADEQUATE AND UNTIMELY SAFETY RECALL OF CLASS VEHICLES

64.     On October 23, 2021, Defendant Ferrari issued a safety recall to the NHTSA, NHTSA Campaign No: 21V833000 (the "Recall"), affecting certain 2010-2015 458 Italia, 2012-2015 Spider, 2014-2015 458 Speciale, 2015 458 Speciale Aperta, 2016-2019 488 GTB, and 488 Spider vehicles.  Ferrari represented that 9,985 potential vehicles were affected and described the problem as follows: "The brake system may leak brake fluid, resulting in a loss of braking ability." Ferrari acknowledged that "[l]oss of braking ability increases the risk of a crash" and stated that a remedy was not available yet but "[o]wners will receive additional notification when a remedy is available. Owners are advised that if the "Low Brake Fluid" warning message appears on the vehicle dashboard, the driver should pull off the road as soon as it is safe to do so, and contact

Ferrari Roadside Assistance for towing to the nearest Ferrari dealer. Owner notification letters are expected to be mailed December 21, 2021." *See* Exhibit B, Alex Ansley, Letter re: *Loss of Braking Ability*, NHTSA, Oct. 29, 2021, https://static.nhtsa.gov/odi/rcl/2021/RCAK-21V833-9373.pdf (last accessed Dec. 16, 2021).

65.     In Part 573 Safety Recall Report 21V-833 dated October 23, 2021, Ferrari states:

Description of the Defect:  Ferrari has determined that a defect related to motor vehicle safety may arise in some MY 2010-2015 Ferrari 458 vehicles and some MY 2016-2019 Ferrari 488 vehicles.  These vehicles are equipped with a braking system that could potentially leak brake fluid, which may lead to partial or total loss of braking capability.

Description of the Safety Risk:  Upon total loss of brake fluid, the vehicle would lose braking capability, which may result in injury or death to vehicles occupants. Description of the Cause:  Unknown at this time.  Ferrari and the supplier of the brake booster / pump assembly, Bosch, are continuing to investigate this issue.

Identification of Any Warning that can Occur:  When the quantity of brake fluid in the relevant reservoir decreases by 52% of the maximum reservoir level (so that a percentage equal to 48% is still in such reservoir) a message will appear on the vehicle's dashboard that reads as follows:  "Brake fluid level low, Go to dealer slowly".  Additionally, a warning light will also appear on the dashboard and an acoustic buzzer will sound."

*See* Ex. A.

66.     The November 4, 2021 Amended Chronology of Defect that Ferrari submitted to

NHTSA states:

Ferrari was made aware of an issue involving a potential braking issue in March 2021 in connection with a MY 2018 Ferrari 488 GTB that had experienced a brake failure in the US.[9] A vehicle technical and insurance subrogation inspection on such car took place in May 2021. The result of the inspection showed that the master cylinder failed causing the loss of brakes. It was not possible to determine the cause of the failure. Ferrari performed certain preliminary verifications on brake booster components without finding the root cause of the failure. Given that such brake components are assemblies entirely manufactured by Bosch, in June 2021, Ferrari

---

[9] Plaintiff Rose purchased his second Class Vehicle in June 2021, three months after Ferrari claims it was aware of the braking issue, yet neither Ferrari nor its agent dealership informed him of the Brake Defect.

requested Bosch to have such components inspected. Bosch inspected one of the assembly and was not able to identify the root cause of the failure. In September 2021, Ferrari was made aware about two 488s that experienced brake failure in the US. Ferrari began performing service history reviews of both of these vehicles. In September 2021, Ferrari requested again Bosch to inspect another assembly. Also for such assembly, Bosch was not able to ascertain the root cause of the relevant failure. In early October 2021, Ferrari was contacted by NHTSA concerning two Vehicle Owner Questionnaires involving 3 VINs, *i.e.*, VIN 232813, VIN 232226 and VIN 234234. Ferrari investigated VIN 234234 and found that the vehicle was repaired under warranty at a dealer. Ferrari obtained the master cylinder/brake booster assembly from the dealer and inspections by the supplier are expected to be carried out also on this component. Additionally, Ferrari sent over to Bosch the assembly of VIN 232226 for its analysis. In October 2021, Ferrari informed Bosch about the inquiry submitted to Ferrari by NHTSA, since Bosch is the owner of all technical information, design and drawings of the brake booster components. Ferrari, in particular, requested Bosch assistance in: (i) providing any documents/information about this component, (ii) continuing to investigate the root cause of the issue as quickly as possible. In October 2021, Ferrari participated in a vehicle inspection of VIN 232226 noticed by State Farm Insurance. At the inspection, it was observed that the brake fluid had leaked into the brake booster chamber. Ferrari has been able to have a representative from Bosch to participate at the inspection. Also a representative from NHTSA was present at this inspection. In October 2021, Ferrari was contacted by an authorized Ferrari dealer regarding a used MY 2018 Ferrari 488 - owned by the dealership - which experienced a loss of braking capability. This vehicle is being shipped to Ferrari for inspection by Bosch. Although Ferrari and Bosch continue to investigate the issue, including the scope of the affected vehicle population and the root cause behind a potential brake fluid leakage, Ferrari decided to conduct a safety recall to address this issue on October 20th, 2021. Verification of the number of warranty claims is still being researched. Ferrari has been made aware of one event where a client, by communication dated July 29th, 2021, reported that he was injured as a consequence of this issue. Ferrari has had no reports of any deaths as a consequence of this issue.

*See* Exhibit C, Amended Chronology of Defect, Nov. 3, 2021, https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V833-7955.pdf (last accessed Dec. 16, 2021).

### D.   FERRARI WAS LEGALLY REQUIRED TO DISCLOSE THE BRAKE DEFECT AND FAILED TO DO SO

67.   Ferrari and Bosch knew of the Brake Defect but did not disclose it to purchasers/lessees either before or after their transaction. Had Ferrari or Bosch disclosed the Brake

Defect, Plaintiff and Class members could have incorporated the information in their purchase/lease decision.

68.     Ferrari and Bosch could have, and should have, disclosed the Brake Defect in its various communications at the point of sale. .

69.     The language and delivery methods available to Ferrari are not novel.  Ferrari's Informational Notification to Owners submitted to NHTSA, (https://www.nhtsa.gov/vehicle/2014/FERRARI/458%252520ITALIA#recalls) exemplifies the type of language that could and should have been provided to Plaintiff and the Class notifying them of the existence of the Brake Defect, how the Brake Defect presents itself to the consumer, and the cause of the Brake Defect. Such detailed information is the very type of information that Plaintiff contend amounts to a material omission and should have been disclosed to Plaintiff and the Class members prior to or at the time of the initial sale of each Class Vehicle. Accordingly, the author (Ferrari) and contents of the Informational Notification to Owners evidence the who, what, when, where, and why of Ferrari's omissions and how such statements could have been provided to each Class Member prior to their purchase of a Class Vehicle.

70.     Furthermore, the Description of Defect contained in documents Ferrari submitted to NHTSA was derived from information provided by Ferrari or otherwise equally available to Ferrari; this summary further evidences the kind of disclosure that should have been made to Plaintiff and consumers prior to purchase:

> Ferrari has determined that a defect related to motor vehicle safety may arise in some MY 2010 - 2015 Ferrari 458 vehicles and some MY 2016 - 2019 Ferrari 488 vehicles. These vehicles are equipped with a braking system that could potentially leak brake fluid, which may lead to partial or total loss of braking capability

71.     Ferrari had a duty to make such a disclosure and inform Plaintiff and the Class about the safety hazard posed by the Brake Defect, whether through its agents (certified Ferrari

dealerships subject to its Dealer Agreements, such as Plaintiff's dealership), through various communications available at the point of sale, or other means available.

72.     Because Ferrari and Bosch did not warn Plaintiff or Class members of the Brake Defect described herein Class members purchased and/or leased their Class Vehicle unaware of the Brake Defect.  Had they known of the Brake Defect, he would not have purchased his Class Vehicle, or certainly would have paid less for it.

73.     To this day, Defendants continue to omit material information concerning the Brake Defect in the Class Vehicles from users, consumers, and the public.  As a result, consumers continue to operate Class Vehicles and continue to experience dangerous failures of the defective braking system, and are at obvious increased risk for crashes and bodily harm.

74.     In light of Defendants' knowledge of the problems associated with, and the serious nature of the Brake Defect at issue, Defendants knew, or should have known, that they were selling the Class Vehicles to consumers with a value that was substantially diminished.

75.     Plaintiff and the Class reasonably expected that the Class Vehicles would not contain a Brake Defect that would substantially impair the Class Vehicles' performance and use. Plaintiff and Class Members also reasonably expected that the Class Vehicles would not require extensive and/or expensive repairs as a result of the Brake Defect (or Defects), which Defects were known to Ferrari and Bosch at the time of sale.

76.     If Defendants had not omitted material information regarding the defective nature of the Class Vehicles, Plaintiff and other members of the Class would not have purchased the Class Vehicles at prices and on the terms offered.

## V.     <u>FRAUDULENT OMISSION ALLEGATIONS</u>

77.     Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Ferrari and Bosch responsible for disseminating unfair, deceptive, and misleading marketing materials regarding the Class Vehicles. Defendants are necessarily in possession of all of this information. Plaintiff's claims arise out of Defendants' fraudulent omission of the Brake Defect.

78.     Plaintiff alleges that at all relevant times, including specifically at the time they and Class members purchased his Class Vehicle, Ferrari and Bosch knew, should have known, or was reckless in not knowing of the Brake Defect; Ferrari and Bosch had a duty disclose information material to a consumer, such as the Brake Defect, based upon its exclusive knowledge; but Ferrari and Bosch never disclosed the Brake Defect to Plaintiff, Class members, or the general public other than its halfhearted, inadequate recall of some Class Vehicles.

79.     Plaintiff makes the following allegations as specific as reasonably possible:

a.      **Who:** *Ferrari* and *Bosch* actively omitted the Brake Defect from Plaintiff and Class members at the point of sale or thereafter.  Defendants' agents should have and could have disclosed the Brake Defect.  As to Plaintiff himself, Ferrari and its certified dealers should have and could have disclosed the Brake Defect at the time he purchased his vehicle or thereafter.

b.      **What:** Ferrari and Bosch knew, should have known, or was reckless in not knowing, that the Class Vehicles contain the Brake Defect.  Despite its knowledge, Ferrari and Bosch *failed to disclosed the Brake Defect* at the point of sale or thereafter.

c.      **When:** Defendants' omissions began *from the start of the Class period and continue to this day*. Ferrari and Bosch have never taken any action to

inform Plaintiff, Class members, or the general public of the true nature of the Brake Defect. As to Plaintiff himself, Defendants have continually omitted the true nature of the Brake Defect for the entirety of the relevant time period, including at the point of sale.

d. **Where:** Ferrari and Bosch's omissions occurred *in every commun*ication they had with Plaintiff, Class members, and the general public.  In fact, Ferrari and Bosch's omissions continue to this day. As to Plaintiff himself, Defendants' omissions occurred in every communication it had with him about his vehicle, including all communications that happened before, at the point of and after their purchase of a Class Vehicle.

e. **How:** Ferrari and Bosch *omitted and failed to disclose* the Brake Defect to Plaintiff, Class members, or the general public at the point of sale or thereafter via a press release, permanent warnings affixed to the vehicles, direct mail campaign, or otherwise.  As to Plaintiff himself, Ferrari and Bosch omitted and failed to disclose the Brake Defect on a Monroney Sticker or any other communication or point of sale document.

f. **Why:** Due to corporate greed, Ferrari omitted the Brake Defect in order to deceive Plaintiff, Class members, and the general public into buying Class Vehicles for a premium value to *maximize its profits*.  Furthering its goal to maximize profits, Ferrari and Bosch failed to notify Class members of the true nature of the Brake Defect to avoid an avalanche of warranty claims and expenses related to replacing every brake system in every Class Vehicle.  As to Plaintiff himself, Ferrari and Bosch omitted the Brake

Defect in order to deceive him into purchasing a Class Vehicle at a premium price, thereby maximizing Ferrari's profits, and avoiding the cost of replacing the braking system in his Class Vehicle.

g.  **Causation:** Because Ferrari nor Bosch never disclosed the Brake Defect, despite their extensive knowledge, Plaintiff and Class members purchased/leased Class Vehicles that did not or will not safely perform and as such are worth less than one that does safely perform. Had Ferrari disclosed the Brake Defect, *Plaintiff and other Class members would not have purchased/leased their Class Vehicle, or certainly would have paid less for it.* Ferrari's omissions further *devalue* Plaintiff's and Class members' Class Vehicle and causes him to pay *out-of-pocket* for a true and complete fix for the Brake Defect.

## VI.  **TOLLING OF STATUTES OF LIMITATIONS**

80.  Defendants were and remain under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles, that the Brake Defect is based on a poor design and/or substandard materials, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.

81.  As a result of this active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### A.  **DISCOVERY RULE TOLLING**

82.  Class Members had no way of knowing about the Brake Defect and the other information concealed by Defendants.

83.    Within the time period of any applicable statutes of limitation, Plaintiff and the Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Brake Defect.

84.    Plaintiff and the Class did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants did not report information within their knowledge to federal authorities (including NHTSA), their dealerships or consumers, nor would a reasonable and diligent investigation have disclosed that Defendants had information in their possession about the existence and dangerousness of the Brake Defect and opted to conceal that information until shortly before this action was filed.

85.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

### B.    FRAUDULENT CONCEALMENT TOLLING

86.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

87.    Instead of disclosing the Brake Defect and disregard of safety of which it was aware, Defendants falsely represented that Class Vehicles were safe, reliable, and of high quality, and that they were a reputable manufacturer that stood behind the Class Vehicles that were on the road.

### C.    ESTOPPEL

88.    Defendants were under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the Brake Defect plaguing the Class Vehicles.

89.    Defendants knowingly, affirmatively, and actively concealed the true nature,

41

quality, and character of the Brake Defect from consumers.

90.     Defendants were also under a continuous duty to disclose to Plaintiff and the Class that scores of the Brake Defect plagued the Class Vehicles, and that the Brake Defect systematically devalued and undermined safety.

91.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.    **CLASS ACTION ALLEGATION**

92.     Plaintiff brings this action as a class action pursuant to Rule 23(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following classes:

> Nationwide class:  All persons or entities in the United States who purchased or leased a Class Vehicle.
>
> Georgia Class
>
> All persons or entities in the state of Georgia who purchased or leased a Class Vehicle.
>
> (Collectively referred to herein as the "Classes")

93.     Excluded from the Classes are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants, Defendants' Dealers, Class Counsel and their employees, and the judicial officers and their immediate family members and associates court staff assigned to this case.

94.     Numerosity—Fed. R. Civ. P. 23(a)(1).  The Classes are comprised of thousands of individuals who were Defendants' customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown. The identity of the Class Members is ascertainable and can be determined based on Defendants' records.

95.     Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3).  The

questions of law and fact common to the Classes predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

(a)   Whether the Class Vehicles have the Brake Defect;

(b)   Whether the Defendants have engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Brake Defect;

(c)   Whether Defendants have engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with a Brake Defect;

(d)   Whether Defendants knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiff and the Classes;

(e)   Whether Defendants owed a duty to Plaintiff and the Classes to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles;

(f)   Whether Defendants breached their duties to Plaintiff and the Classes to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

(g)   Whether Defendants breached their duties to Plaintiff and the Classes by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

(h)   Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

(i)   Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

(j)   Whether Plaintiff and the Classes are entitled to compensatory and/or actual damages, including but not limited to the cost to repair the Class Vehicles, remove and replace the defective brakes, as well as damages from the diminution of value of Class Vehicles;

(k)   Whether Defendants concealed material facts from their communications and disclosures to Plaintiff and the Classes regarding the Brake Defect in the Class Vehicles;

(l)   Whether, as a result of Defendants' conduct, Plaintiff and the Classes have suffered damages and, if so, the appropriate amount thereof; and

(m) Whether Plaintiff and the Classes are entitled to treble damages and/or punitive damages or other relief.

96.     Typicality—Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of the Classes in that Plaintiff, like all Class Members, purchased a Class Vehicle and is subject to losses resulting from the failure of the Class Vehicles.  Plaintiff has experienced problems with his Class Vehicle consistent with those experienced by Class Members.  Plaintiff has suffered damages in the form of costs to replace and repair his Class Vehicle, as well as the diminution of value of the underlying real property, and such damages are consistent with those suffered by Class Members.

97.     Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).     Plaintiff is an adequate representative of the Classes because he fits within the class definition and his interests do not conflict with the interests of the Members of the Classes they seek to represent. Plaintiff is represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the Members of the Classes.

98.     Superiority—Fed. R. Civ. P. 23(b)(3).  A class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiff and members of the Classes have suffered irreparable harm as a result of Defendants' bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class Members' claims, no Class Member could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the

bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of their violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

99.     Plaintiff and the Classes do not anticipate any difficulty in the management of this litigation.

### VIII.        **NATIONWIDE CLAIMS**

**NATIONWIDE COUNT I**
**FRAUD BY CONCEALMENT OR OMISSION**
**COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

100.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

101.     Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977). In the alternative, Plaintiff brings this claim on behalf of the State Sub-Class.

102.     Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiff and Class members. Defendants knew, or should have known, that the braking system was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles can cause complete brake failure. Further,

Defendants knew, or should have known, that such failure would place vehicle operators, passengers and the general public at risk for serious injury.

103.    A reasonable consumer would not have expected that the Class Vehicles contain a defective braking system that could cause brake failure and significantly increase the risk death and/or injury to operators, passengers, and the general public. Defendants knew that reasonable consumers expect that their vehicle has a fully functional braking system, and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

104.    Defendants ensured that Plaintiff and the Class did not discover this information through actively concealing it and misrepresenting the Class Vehicles' braking systems without disclosing the truth. Defendants intended for Plaintiff and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

105.    Defendants had a duty to disclose the Brake Defect because:

    a.    Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety Defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Class;

    b.    Defendants knew the Brake Defect (and its safety risks) was a material fact that would affect Plaintiff's or Class members' decisions to buy or lease Class Vehicles;

    c.    Defendants are subject to statutory duties to disclose known safety Defects to consumers and NHTSA; and

d.      Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their braking systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Class that the Class Vehicles contained the dangerous Brake Defect. Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiff and the Class, Defendants had the duty to disclose the whole truth. They did not.

106.    To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiff and the Class, and continue to conceal material information regarding the Brake Defect. Indeed, Defendants have failed to inform the Plaintiff and the Class of the root cause of the Defect. *See* Exhibit A. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and the Class.

107.    Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs. They did so at the expense of Plaintiff and the Class. Had they been aware of the Brake Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiff and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

108.    Accordingly, Defendants are liable to Plaintiff and the Class for damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

109.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiff's and the Class' rights and well-being; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**NATIONWIDE COUNT II**
**NEGLIGENT MISREPRESENTATION**
**COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

110.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

111.    Plaintiff assert this Negligent Misrepresentation count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

112.    Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiff and Class members because Defendants knew or should have known of the Defect and the risks associated with the braking system's failure. Defendants also made partial disclosures regarding the safety of the Class Vehicles while Defendants either knew or should have known that the Class Vehicles possessed the Brake Defect and failed to disclose its existence and its corresponding safety hazard.

113.    Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the fact that the braking system installed in the Class Vehicles is defective and prone to failure, exposing drivers and occupants to safety risks. Defendants misrepresented that

48

they would remedy any defects under the express warranties but unconscionably temporarily limited coverage despite knowledge of the latent nature of the Defect. As a direct result of Defendants' negligent conduct, Plaintiff and Class members have suffered actual damages.

114.    The fact that the braking system installed in the Class Vehicles is defective is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the braking system fails, the Class Vehicles may experience a partial or total loss of braking capability. During failure drivers may be unable to control their vehicle. Drivers and occupants of the Class Vehicles, indeed the public at large, are at risk for collisions or other accidents which may directly result from failure of the braking system. No reasonable consumer expects a vehicle to contain a dangerous safety defect, that can cause the brakes to fail with no warning or time to take preventative measures.

115.    Plaintiff and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Brake Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiff and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

116.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Brake Defect, Plaintiff and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

### NATIONWIDE COUNT III
### UNJUST ENRICHMENT
### COMMON LAW
### (ON BEHALF OF THE NATIONWIDE CLASS)

117.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

118.    Plaintiff assert this Unjust Enrichment count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

119.    Because of their conduct, Defendants caused damages to Plaintiff and Class members.

120.    Plaintiff and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Brake Defect and misrepresentations regarding the Class Vehicles' safety.

121.    As a result of Defendants' fraud and deception, Plaintiff and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

122.    Defendants knowingly benefitted from their unjust conduct. They sold and leased Class Vehicles equipped with a Brake Defect for more than what the vehicles were worth, at the expense of Plaintiff and Class members.

123.    Defendants readily accepted and retained these benefits from Plaintiff and Class members.

124.    It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Brake Defect to consumers. Defendants knowingly temporarily limited their warranty coverage and excluded the Brake Defect. Plaintiff and Class members would not have purchased or leased the Class Vehicles or paid less for it had Defendants not concealed the Brake Defect.

125.    Plaintiff and Class members do not have an adequate remedy at law.

126.    Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiff and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

**NATIONWIDE COUNT IV**
**VIOLATION OF THE N.J. CONSUMER FRAUD ACT ("NJCFA")**
**N.J. STAT. ANN. § 56:8-2 ET SEQ.**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

127.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

128.    Plaintiff assert this Violation of the NJCFA claim on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

129.    The NJCFA prohibits:

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. STAT. ANN. § 56:8-2.

130.    Plaintiff and members of the Nationwide Class are consumers who purchased or leased Class Vehicles for personal, family, or household use.

131.    Ferrari North America, Inc. maintains its principal executive offices in Englewood Cliffs, New Jersey and the misconduct complained of herein originated in New Jersey. All class members—even those who never stepped foot in New Jersey but purchased or leased Class

Vehicles in reliance on Defendants' misrepresentations and fraudulent omissions—directly implicate New Jersey's interest in regulating businesses and commerce.

132.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Brake Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles—which were sold or leased—and failed to disclose the Brake Defect and corresponding safety risk in violation of the NJCFA.

133.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff and members of the Nationwide Class. When Plaintiff and members of the Nationwide Class purchased or leased his Class Vehicle, they reasonably relied on the reasonable expectation that the Class Vehicles' braking system was free from latent defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the braking system may fail and/or create an unavoidable safety risk, Plaintiff and members of the Nationwide Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

134.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Brake Defect and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

135.    Defendants knew that the Brake Defect was designed defectively and unconscionably, temporarily limited the manufacturer's warranty coverage so that the braking system would be excluded, thereby unlawfully transferring the costs of repair or replacement to Plaintiff and members of the Nationwide Class. Further, Defendants unconscionably marketed the

Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

136.    Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiff and members of the Nationwide Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the braking system's failure. Rather than disclose the Defect, Defendants intentionally concealed the Defect with the intent to mislead Plaintiff and members of the Nationwide Class in order to sell additional Class Vehicles, protect their reputation, and wrongfully transfer the cost of repair or replacement of the braking system to Plaintiff and members of the Nationwide Class.

137.    Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause partial or total loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators, passengers, and the general public at risk for serious death or injury.

138.    Had Plaintiff and members of the Nationwide Class known about the Brake Defect at the time of purchase, including the safety hazard posed by the Defect, they would not have bought the Class Vehicles or would have paid much less for them.

139.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiff and members of the Nationwide Class have suffered and continue to suffer harm by the threat of unexpected failure of the braking system and/or actual damages in the amount of the cost to replace the braking system, and damages to be determined at trial. Plaintiff and members of the Nationwide Class have also suffered the ascertainable loss of the diminished value of their vehicles.

140.     As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff and members of the Nationwide Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial. *See* N.J. STAT. ANN. § 56:8-19. Plaintiff and members of the Nationwide Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA. *See* N.J. STAT. ANN. § 56:8-19.

## IX.    <u>STATE SPECIFIC CLAIMS</u>

### <u>GEORGIA COUNTS</u>

### GEORGIA COUNT I
### VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### GA. CODE ANN. § 10-1-370 ET SEQ.
### (ON BEHALF OF THE GEORGIA STATE CLASS)

141.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

142.     Plaintiff brings this claim on behalf of himself and the Georgia Sub-Class against all Defendants.

143.     Defendants, Plaintiff, and members of the Georgia State Class are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

144.     The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

145.     In the course of their business, Defendants violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

146.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Brake Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Georgia UDTPA.

147.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Georgia State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

148.    Defendants' scheme and concealment of the Brake Defect and true characteristics of the braking systems in the Class Vehicles were material to Plaintiff and Georgia State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Georgia State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

149.    Plaintiff and Georgia State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Georgia State Class members did not, and could not, unravel Defendants' deception on their own.

150.    Defendants had an ongoing duty to Plaintiff and Georgia State Class members to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed Plaintiff and Georgia State Class members a duty to disclose all the material facts concerning the Brake Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Georgia State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

151.    Defendants' violations present a continuing risk to Plaintiff and Georgia State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

152.    As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiff and the Georgia State Class have suffered injury-in-fact and/or actual damage.

153.    Plaintiff and the Georgia State Class seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

## X.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for judgment against Defendants, granting the following relief:

a.    An order certifying this case as a class action and appointing Plaintiff's counsel to represent the Classes and Plaintiff as representative of the Classes;

b.    All recoverable compensatory and other damages sustained by Plaintiff and the Classes;

c.    Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiff

and the Classes in the maximum amount permitted by applicable law;

   d.  An order (1) requiring Defendants to immediately cease their wrongful conduct as set forth above; (2) enjoining Defendants from continuing to conceal material information about the Brake Defect of the Class Vehicles; and (3) requiring Defendants to refund to Plaintiff and all members of the Classes the funds paid to Defendant for the Brake Defective Class Vehicles, and/or repairs resulting from the Brake Defect;

   e.  Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

   f.  Such other relief as the Court may deem just and proper.

XI.    **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  December 30, 2021                            Respectfully submitted,

James E. Cecchi
Caroline F. Bartlett
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY
 & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
P: 973-994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

Michael J. Flannery
CUNEO GILBERT &
LADUCA, LLP
500 North Broadway
Suite 1450
St. Louis, MO  63102
P: 314-226-1015
mflannery@cuneolaw.com

Gary K. Burger
BURGER LAW, LLC
500 North Broadway
Suite 1860
St. Louis, MO  63102
P: 314-542-2222
gary@burgerlaw.com

Charles J. LaDuca
Katherine Van Dyck
CUNEO GILBERT &
LADUCA, LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC  20016
P: 202-789-3960
charles@cuneolaw.com
kvandyck@cuneolaw.com

*Counsel for Plaintiff and the Class*