UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY ROSE, VAN CARLUCCI, ART BARTOSIK and SIXTYSIX CAPITAL, LLC, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 21-20772(MEF)(CLW) |
| Plaintiffs, | **AMENDED OPINION and ORDER** |
| v. | |
| FERRARI NORTH AMERICA, INC., FERRARI S.P.A., ROBERT BOSCH, LLC, and ROBERT BOSCH GMBH, | |
| Defendants. | |

The Plaintiffs sued various companies based on a brake defect. One of the companies has moved to dismiss, arguing the Court does not have jurisdiction.

The motion is denied.

### I. Procedural History

This case was initiated during December of 2021, and the Plaintiffs filed an amended complaint in December of 2022.

One of the Defendants named in the amended complaint, Ferrari S.p.A. ("the Defendant"), has moved to dismiss, contending the Court does not have personal jurisdiction.

The Plaintiffs' response: the Court (a) has jurisdiction or (b) should order discovery as to jurisdiction.

1

II. **Analysis**

Jurisdictional discovery "should be allowed unless the plaintiff's [jurisdictional] claim is clearly frivolous." Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) (cleaned up). This standard is met when jurisdictional claims "suggest with reasonable particularity the possible existence of the requisite contacts between [the defendant] and the forum state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (cleaned up).

Here, the Plaintiffs' "claim" is that the Court has "specific" jurisdiction over the Defendant. See Opposition to Motion to Dismiss at 2, 8 n.4.

Is this claim "clearly frivolous"? That is taken up below.

\*   \*   \*

A federal court can exercise personal jurisdiction to the same extent as the state courts of the state where the federal court sits. See Fed. R. Civ. P. 4(k)(1)(A); Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).

In New Jersey, jurisdiction over a defendant not in New Jersey, like the Defendant here, reaches as far as the United States Constitution allows. See N.J. Court Rule 4:4-4; Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 469 (1986); see also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004).

Under the United States Constitution:

> The [specific jurisdiction] inquiry . . . has three parts. First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.

O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up).

[1] **Purposeful Availment**

As to the first of the three prongs, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." Ford Motor Co. v. Montana

2

Eighth Jud. Dist. Ct., 592 U.S. __, 141 S. Ct. 1017, 1024 (2021). This requires "deliberate targeting" of the forum. O'Connor, 496 F.3d at 317; see also Ford Motor Co., 141 S. Ct. at 1025.

Here, the "purposeful availment" bar is cleared by enough to allow discovery.

The Defendant makes cars outside of New Jersey. See Cecchi Decl., Ex. D. at P00050;[1] Amended Complaint ¶¶ 45, 59; Galliera Decl. ¶ 4.[2] The Defendant then supplies them to another entity, see Cecchi Decl., Ex. D at P00050, Galliera Decl. ¶ 7, Amended Complaint ¶¶ 46-47, 53, whose principal place of business is New Jersey. See Amended Complaint ¶ 46. The New Jersey entity is the "exclusive distributor" of the cars to American dealers (at least when the cars are new). Id. ¶ 46; accord Galliera Decl. ¶ 8 (New Jersey entity is "the distributor"); see also Cecchi Decl., Ex. A at P00016-021. During recent years, thousands of the cars have been shipped by the Defendant to the New Jersey entity. See Amended Complaint ¶¶ 45, 53; Cecchi Decl., Ex. D at P00141-47. Most (or many) of the cars are shipped to the New Jersey entity through a New Jersey shipping port. See Cecchi Decl., Ex. D at P00141-47. Some of the cars shipped to the New Jersey entity are sold in New Jersey. See Amended Complaint ¶¶ 46; cf. Galliera Decl. ¶¶ 7-8.

These are purposeful and systematic interactions with New Jersey. Not "random, isolated, or fortuitous" ones. Ford Motor Co., 141 S. Ct. at 1025.

They suggest the "possible existence," Toys "R" Us, Inc., 318 F.3d at 456 (cleaned up), of contacts with New Jersey that add up to "purposeful availment," such that jurisdictional discovery "should be allowed." Mass. Sch. of L. at Andover, 107 F.3d at 1042.

The Court (through another Judge) has come to this conclusion in two recent cases.[3] The cases are based on closely similar

---

[1] The Cecchi Declaration was submitted by the Plaintiffs.

[2] The Galliera Declaration was submitted by the Defendant.

[3] See Opheim v. Volkswagen Aktiengesellschaft, 2021 WL 2621689, at *5 (D.N.J. June 25, 2021) (ordering discovery; purposeful availment claim not "clearly frivolous" where foreign manufacturer had an "ongoing, substantial relationship," with an

3

allegations to those at issue here. The cases are well-reasoned. And the cases are consistent with the weight of precedent.[4] This Court will follow them.

---

entity that was: (1) the manufacturer's "gateway into the American market" and (2) incorporated in New Jersey); Rickman v. BMW of N. Am. LLC, 538 F. Supp. 3d 429, 437 (D.N.J. 2021) (ordering discovery; purposeful availment claim not "clearly frivolous" on essentially the same allegations as in Opheim, though "gateway" entity was not incorporated in New Jersey, but rather had its principal place of business here).

[4] See Phila. Contributionship Ins. Co. v. Neoteric Sols. Inc., 2016 WL 791427, at *2-3 (D.N.J. Feb. 5, 2016) (ordering discovery; purposeful availment claim not "clearly frivolous" where foreign manufacturer worked with an entity that: (1) was "possib[ly] . . . an agent or authorized distributor" of the manufacturer and (2) was "located" in New Jersey), report & recommendation adopted, 2016 WL 780570 (Feb. 24, 2016); see also Golden Fortune Imp. & Exp. Corp. v. Mei-Xin (Hong Kong) Ltd., 2022 WL 1002626, at *8-9 (D.N.J. Apr. 4, 2022) (purposeful availment where foreign manufacturer worked with an entity that: (1) was its exclusive distributor for the eastern United States, and (2) had its principal place of business in New Jersey), rev'd on other grounds, Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd., 2022 WL 3536494, at *5 (3d Cir. Aug. 5, 2022); One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 323-324 (D.N.J. 1997) (purposeful availment where non-New Jersey defendant worked with an entity that: (1) was to distribute products throughout the northeast and (2) was based in New Jersey). Other relevant cases include: Meridian Consulting I Corp., Inc. v. Eurotec Canada Ltd., 2021 WL 689132, at *4-7 (D.N.J. Feb. 22, 2021) (purposeful availment where foreign company maintained a "substantial relationship" with a customer and that customer had its principal place of business in New Jersey); Young v. Mitsubishi Motors N. Am. Corp., 2020 WL 4584391, at *3-4 (W.D. Wash. Aug. 10, 2020) (purposeful availment where foreign manufacturer worked with distributor that: (1) sold and marketed the relevant product nationwide, including in the forum state and (2) was not located in the forum state); Limu Co., LLC v. Quality Craft Spirits Ltd., 2018 WL 1292191, at *4 (E.D. Pa. Mar. 13, 2018) (purposeful availment where foreign company: (1) worked with a distributor to sell the relevant product in the forum state and (2) the distributor was a "[forum state] company"); see generally Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 491 (3d Cir. 1985); Columbia

### [2] Arise Out Of or Relate to New Jersey Contacts

As to the second of the three specific jurisdiction prongs, a plaintiff can show the complained-of conduct "caus[ed]" the injury, O'Connor, 496 F.3d at 323, or "relate[d] to" the plaintiff's claim. Ford Motor Co., 141 S. Ct. at 1026; see Hepp v. Facebook, 14 F.4th 204, 207 (3d Cir. 2021); Rickman, 538 F. Supp. 3d at 441-42.

Here, only a "related to" theory is in play. See Opposition to Motion to Dismiss at 22-26.

The Court therefore "examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." O'Connor, 496 F.3d at 319; see also, e.g., id. at 323.

In the operative complaint, the Plaintiffs plead two categories of claims.

The first encompasses nationwide counts I, II, IV, V, VI, and VII, plus analogous state-specific claims. See Amended Complaint ¶¶ 190-206, 218-346. At their core, these claims are based on the allegation that people bought cars that were not as good as they had been led to believe, because the cars' brakes were bad.

As to this category of claims, what customers were told about a car is "relevant to the merits."[5] O'Connor, 496 F.3d at 319.

And the Defendant is said to have worked with the above-referenced New Jersey entity on these sorts of customer-facing communications.

The Defendant and the New Jersey entity collaborated on "owner's manuals, supplements, warranty booklets, advertisements, and other promotional materials." Amended Complaint ¶ 47. These materials included brochures created by the Defendant and distributed by the New Jersey entity. See id. ¶ 136; see, e.g., Cecchi Decl. Ex. O. Some of the brochures sung the praises of

---

Metal Culvert Co. v. Kaiser Indus. Corp., 526 F.2d 724, 730 (3d Cir. 1975); cf. generally D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 109 (3d Cir. 2009).

[5] See Amended Complaint ¶¶ 42-43, 47, 136 (describing what customers were told).

the allegedly defective brakes. See Amended Complaint ¶¶ 47, 136; Cecchi Decl., Ex. O. And the brochures, along with the other marketing materials, were provided to domestic dealers by the New Jersey entity for the purpose of reaching potential car buyers. See Amended Complaint ¶ 47.[6]

In addition, the Defendant and the New Jersey entity collected and shared consumer data with one another for marketing purposes. See Cecchi Decl., Ex. G at P00996-01004; Amended Complaint ¶ 53.

In short, the Defendant allegedly worked with the New Jersey entity on customer communications that "relate to," O'Connor, 496 F.3d at 317, the Plaintiffs' first set of claims.

The operative complaint also includes a second type of claim, a strict liability claim. See Amended Complaint ¶¶ 207-217. This claim is not, like the others, based on an alleged gap between what customers thought would happen (I will get a good car) and what did happen (I got a bad car). Instead, this claim is based solely on what allegedly happened --- I got a bad car (because its brakes are bad).

As to the strict liability claim, defects in the performance of the cars (and their brakes) are "relevant to the merits."[7] O'Connor, 496 F.3d at 319.

---

[6] The declaration submitted by the Defendant, see footnote 2, does not purport to contradict the allegations described in this paragraph. It says marketing "decisions" were made solely by the New Jersey entity. See Galliera Decl. ¶ 9. That does not rebut the complaint's allegations of marketing collaboration. The complaint therefore can be relied on here, for now. See generally Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330-31 (3d Cir. 2009); Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992); Golden Fortune Imp. & Exp. Corp., 2022 WL 1002626, at *6, ("Plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person. Once these allegations are contradicted by an opposing affidavit, however, plaintiffs must present similar evidence in support of personal jurisdiction"), rev'd sub nom., Golden Fortune Imp. & Exp. Corp., 2022 WL 3536494.

[7] See Amended Complaint ¶¶ 3-4, 9-10, 78-95 (describing the defect).

6

And the Defendant is said to have worked with the New Jersey entity on defects.

A manual for one of the car models at issue directed owners to notify the Defendant about defects. See Cecchi Decl, Ex. N at P01361. The same manual said the Defendant, along with the New Jersey entity, could access certain "monitored information" (like crash information). Id. at P01362.

In addition, the Defendant sent personnel to the United States to interact with the New Jersey entity about the relevant brake defects. See Amended Complaint ¶ 53.

And when cars had problems, the New Jersey entity told car dealers to return some car parts directly to the Defendant. See Cecchi Decl., Ex. L at P01282-01297. The Defendant also conducted investigations into certain car problems, the results of which the New Jersey entity then told car owners about. See Cecchi Decl., Ex. B at P00043-44.

In sum, the Defendant allegedly worked with the New Jersey entity to assess and respond to car defects. This "relate[s] to," O'Connor, 496 F.3d at 317, the Plaintiffs' strict liability claim --- much as the Defendant's work with the New Jersey entity to communicate with customers, see above, "relate[s] to" the Plaintiffs' first set of claims.

Taken together, this adequately alleges the "possible existence," Toys "R" Us, Inc., 318 F.3d at 456, of "related to" contacts, such that jurisdictional discovery "should be allowed." Mass. Sch. of L. at Andover, 107 F.3d at 1042.

As before, the point does not need much elaboration --- the Court has recently come to this conclusion, on fairly similar allegations.[8]

---

[8] See Opheim, 2021 WL 2621689, at *6 (ordering discovery; "related to" claim not "clearly frivolous" where: (1) it was plausible that the foreign manufacturer worked with the distributor on relevant marketing, (2) the complained-of injury related to misrepresentations, and (3) the distributor was incorporated in New Jersey); Rickman, 538 F. Supp. 3d at 443 (ordering discovery; "related to" claim not "clearly frivolous" where: (1) it was plausible that the foreign manufacturer provided "marketing concepts" to distributor, (2) the complained-of injury related to misrepresentations, and (3) the distributor had its principal place of business in New Jersey);

### [3] Fair Play And Substantial Justice

When the first two specific jurisdiction prongs are met, as here, "the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1986)).

Under the "fair play" prong, the Court considers:

> [1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the procedural and substantive interests of other nations."

O'Connor, 496 F.3d at 324 (cleaned up, bracketed numbers added).

Here, the five factors do not lean the Defendant's way.

First, the Defendant does not suggest that its defense would be compromised by litigating here, or that its finances or operations would be strained. Therefore, the Defendant cannot persuasively complain of a "burden."[9]

---

see also Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 217 (D.N.J. 2020) (claims "related to" forum activities where: (1) foreign manufacturer engaged domestic distributor, (2) the alleged injuries arose from "general marketing decisions" that "emanated" from the distributor, and (3) the distributor's principal place of business was in New Jersey at relevant times). Note that the "related to" prong has been established on fainter connections to the forum than were at issue in Opheim, Rickman, or Ponzio. See, e.g., Young, 2020 WL 4584391, at *5; TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc., 537 F. Supp. 2d 635, 640 (D. Del. 2008). For a relevant Third Circuit case, see Miller Yacht Sales, Inc., 384 F.3d at 100. Also: Pinker, 292 F.3d at 369-372.

[9] And especially given the Defendant's substantial relationship with the New Jersey entity, and its heavy reliance on it. See Opheim, 2021 WL 2621689, at *6; Rickman, 538 F. Supp. 3d at 443; cf. Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d

<u>Second</u>, New Jersey has an "interest" in "adjudicating the dispute" because it involves a New Jersey defendant, at least one New Jersey plaintiff, and the systematic shipment of thousands of cars through the "gateway" of New Jersey. See <u>Opheim</u>, 2021 WL 2621689, at *6; <u>cf</u>. <u>Colvin v. Van Wormer Resorts, Inc.</u>, 417 F. App'x 183, 188 (3d Cir. 2011).

<u>Third</u> and <u>fourth</u>, the cause of "convenient and effective relief" would not be served by breaking this case into a New Jersey piece (against the other defendants) and another piece (against the Defendant). See, e.g., <u>Opheim</u>, 2021 WL 2621689, at *6; <u>Rickman</u>, 538 F. Supp. 3d at 444. And all the more so because of New Jersey's connections to this case, <u>see</u> above, including as a location where evidence will presumably be located.

<u>Fifth</u>, the Defendant, an Italian company, says Italy's "interests" weigh against jurisdiction. But the Defendant has not said much more than that. For example, there is nothing on the purported views of the Italian government. See, e.g., <u>In re Nazi Era Cases Against German Defendants Litig.</u>, 320 F. Supp. 2d 204, 234 (D.N.J. 2004). And more generally: it matters that the Defendant is incorporated abroad, <u>see</u> <u>Asahi Metal Indus. Co. V. Superior Ct. Of Calif.</u>, 480 U.S. 102 (1987), but less so in a case like this one, that concerns injuries in the United States and claims pressed by all-United States plaintiffs against at least one United States defendant. See <u>O'Connor</u>, 496 F.3d at 325.

In sum: the Defendant has not made a "compelling case," <u>Carteret</u>, 954 F.2d at 150, that jurisdiction is "unreasonable" here.

\*   \*   \*

Jurisdictional discovery as to the Defendant may go forward. The motion to dismiss is denied. This is without prejudice to a challenge later, after jurisdictional discovery is done.

IT IS on this 31st day of July, 2023, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

476, 483-484 (3d Cir. 1993); <u>see also</u> <u>M&B IP Analysts, LLC v. Cortica-US, Inc.</u>, 2020 WL 3411027, at *5 (D.N.J. June 22, 2020).