<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY ROSE et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>FERRARI NORTH AMERICA, INC. et al.,<br><br>　　　　　Defendants. | Civil Action No. 21-20772(JKS)(CLW)<br><br>**OPINION**<br><br>March 14, 2025 |

**SEMPER**, District Judge.

Before the Court is Defendant Ferrari North America, Inc.'s ("Defendant" or "Ferrari") motion to dismiss Plaintiffs' Second Amended Complaint (ECF 160, "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 170-1, "Def. Br.") Plaintiffs filed a brief in opposition. (ECF 177, "Opp.") Defendant filed a reply. (ECF 179, "Reply.") The Court reviewed Plaintiffs' Second Amended Complaint and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

This putative class action arises from a brake defect impacting certain Ferrari vehicles. Ferrari is a luxury sports car brand. (SAC ¶ 1.) Plaintiffs Jeffrey Rose, Van Carlucci, Iliya Nechev, Anthony Mirti, Howard Hardwick, Leonard Mauceli, and Nicholas DiSantis ("Plaintiffs"), who

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The facts are taken from Plaintiffs' Second Amended Complaint.

all purchased or leased Ferrari vehicles, bring this action against Defendants Ferrari North America[2] and Robert Bosch GmbH ("Bosch") on behalf of themselves and all those similarly situated. (*Id.* ¶ 11.)

## A. The Brake Defect

On October 28, 2021, Ferrari commenced a voluntary recall and issued a notice explaining that "vehicles are equipped with a braking system that could potentially leak brake fluid, which may lead to partial or total loss of braking capability" (the "Brake Defect"). (*Id.* ¶ 4.) In this initial recall notice, Ferrari identified the master cylinder/brake booster assembly as the defective component. (*Id.*) The identified defective part impacted Plaintiffs Rose, Nechev, Mirti, and Hardwick's class vehicles. (*Id.*) Ferrari explained that the brake components were manufactured by Bosch and installed in class vehicles manufactured by Ferrari. (*Id.*)

On July 26, 2022, Ferrari expanded its initial recall and began offering a purported remedy that involves replacing the brake fluid cap at the entry point of the brake fluid reservoir component of the braking system. (*Id.* ¶ 7.) However, in a later-filed document, Ferrari identified two failure modes that could cause complete brake failure, with only one failure mode affecting Part Number 000244010, which Ferrari previously identified as the defective component. (*Id.*) The first failure mode involves the rearmost seal (or the isolation seal) twisting out of place, which causes brake fluid to leak from the master cylinder into the brake booster. (*Id.*) The brake fluid leak depletes the fluid levels in the primary brake circuit (front brakes), causing the primary circuit to lose braking capabilities. (*Id.*) According to Ferrari, "[w]hen this happens, the brake capability is limited to the secondary circuit" ("Failure Mode One"). (*Id.*) However, the Brake Defect may also cause failure

---

[2] Defendant Ferrari North America is an automobile distributor incorporated in Delaware with its principal place of business at 250 Sylvan Avenue, Englewood Cliffs, New Jersey. (SAC ¶ 98.) Ferrari is the exclusive distributor and warrantor of Ferrari automobiles, parts, and accessories manufactured by Ferrari to retail dealers in the United States. (*Id.*)

of the secondary circuit (rear brakes), making braking capabilities "almost totally compromised." (*Id.*) Specifically, when the rearmost seal twists, ventilation is affected, creating a vacuum inside the brake fluid reservoir that causes "the secondary circuit [to] fail" ("Failure Mode Two"). (*Id.*)

Plaintiffs assert Ferrari's public filings confirm that the recall remedy of replacing the brake fluid cap only acts as an interim corrective measure for Failure Mode Two. (*Id.* ¶ 8.) The recall remedy also provides a warning system for Failure Mode One via a software update, should the rearmost seal twist and brake fluid leak. (*Id.*) Plaintiffs allege that despite Ferrari's knowledge of Failure Mode One, it has not released any countermeasure to remedy the failure mode or prevent the twisting of the rearmost seal. (*Id.*) Plaintiffs allege the purported remedy was an "inexpensive 'quick' fix" and that replacement of the master cylinder would be the effective remedy. (*Id.* ¶ 127.)

**B. Ferrari's Knowledge, Misrepresentations, Omissions, and Duty to Disclose**

Plaintiffs assert Ferrari possessed exclusive access to and was in a superior position to know the facts about the Brake Defect. (*Id.* ¶ 106.) Plaintiffs assert Ferrari's knowledge is established by (1) testing conducted to remain in compliance with Federal Motor Vehicle Safety Standard regulations (*id.* ¶¶ 133-46); (2) international and domestic litigation alleging defective brakes (*id.* ¶¶ 147-57); (3) National Highway Traffic Safety Administration ("NHTSA") complaints, which Ferrari is legally obligated to monitor (*id.* ¶¶ 158-61); (4) discussions on Ferrari owner forums, which are sponsored by several authorized Ferrari dealerships (*id.* ¶¶ 162-65); (5) highly publicized manifestations of brake failure (*id.* ¶¶ 166-72); (6) warranty claims submitted to Ferrari's network of dealerships, which could be the primary source of Ferrari's knowledge and in its exclusive possession (*id.* ¶¶ 173-76); (7) discussions between customers and Ferrari executives, including those managing after sales operation and customer care at Ferrari (*id.* ¶¶ 177-85); and

(8) post-brake-failure communications between Bosch and Ferrari concerning the root cause of any braking issues in the class vehicles, including post-recall. (*Id.* ¶ 7.)

Plaintiffs allege that despite this knowledge, and in breach of their obligations to Plaintiffs and the Class, Ferrari and Bosch have failed to act. (*Id.* ¶ 9.) Defendants have not informed owners of the Brake Defect's full extent, only remedied one failure mode, and continue to sell (or benefit from the sale of) thousands of cars containing the Brake Defect. (*Id.*) Indeed, Plaintiffs allege Ferrari's recalls do not call for what is needed: replacement of the defective master cylinders. (*Id.*)

Plaintiffs assert Defendants made materially misleading statements about class vehicle safety and braking capability, including when affixing or providing to each owner or lessee: (i) certification labels that uniformly communicate compliance with motor vehicle safety standards in every class vehicle (*id.* ¶¶ 204-29); (ii) in-vehicle safety information, such as in the owner's service book, about brakes and required maintenance of the braking system (*id.* ¶¶ 230-36); and (iii) other consumer-facing marketing up to and at the point of sale, including the Monroney label (*id.* ¶¶ 237-41). Furthermore, Plaintiffs assert Defendants omitted information concerning the Brake Defect from all advertising, promotion, or other contacts with Plaintiffs and class members prior to their purchase or lease of the class vehicles. (*Id.* ¶¶ 10, 246-48.) Plaintiffs assert Defendants had a duty to disclose the Brake Defect because they made partial disclosures concerning the recalls, and they were in a superior position to know of the Brake Defect, actually knew about the Brake Defect, and Plaintiffs and the class could not have reasonably discovered the Brake Defect until the brakes in the class vehicles failed. (*Id.* ¶¶ 9, 132, 186, 190.)

Plaintiffs lacked any knowledge of the Brake Defect when purchasing or leasing their vehicles. (*Id.* ¶ 191.) Had Plaintiffs known about the Brake Defect, they would not have purchased the class vehicles. (*Id.* ¶¶ 193-95.) Plaintiffs seek damages for overpayment at the point of sale,

diminution of value, the cost of repair of the class vehicles, attorneys' fees and costs, punitive damages, and any other legal relief available for their claims. (*Id.* ¶ 11.)

## C. The Individual Plaintiffs

### 1. Jeffrey Rose[3]

Plaintiff Jeffrey Rose ("Plaintiff Rose") is a Missouri citizen. (*Id.* ¶ 12.) On June 25, 2021, Plaintiff Rose purchased a pre-owned 2018 488 GTB Ferrari, VIN ZFF79ALA9J0232226, at Ferrari Maserati Atlanta, a certified Ferrari dealer, located in Roswell, Georgia. (*Id.* ¶ 16.) Plaintiff Rose's class vehicle came with a three-year/unlimited-mileage factory warranty and a 24-month bumper-to-bumper extended warranty purchased by the original owner that expired on December 19, 2022. (*Id.*)

Prior to purchasing his class vehicle, Plaintiff Rose viewed and inspected the Monroney label that informed him of the make and model of the vehicle and provided detailed specifications concerning its braking system. (*Id.* ¶ 17.) The Monroney label also informed Plaintiff Rose that the vehicle was assembled in Maranello, Modena, Italy, then imported by Ferrari through Port Newark, and stored in a warehouse in Port Newark. (*Id.*) The Monroney label also stated that it had been affixed by Ferrari pursuant to the requirements of 15 U.S.C. § 1231, *et seq.*, which prohibited its "removal or alternation [sic] prior to delivery to the ultimate purchaser." (*Id.*)

Also prior to purchase, Plaintiff Rose viewed and inspected the permanent certification label affixed by Ferrari and dated November 2017, which stated: "[t]his vehicle conforms to all

---

[3]   In 2020, Plaintiff Rose purchased a different pre-owned 2018 Ferrari 488 GTB, VIN ZFF67NFA0E0196856, from Continental Auto Sports, a certified Ferrari dealer located in Hinsdale, Illinois. (SAC ¶ 12.)  This vehicle also experienced the Brake Defect and sunk to the bottom of a pond after its brakes failed to engage. (*Id.* ¶ 14.) This vehicle was deemed a total loss by Plaintiff Rose's automobile insurer, State Farm. (*Id.* ¶ 15.) "On June 23, 2021, Plaintiff Rose settled his insurance claim with State Farm." (*Id.*)

applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 18.)

Less than one month after purchase, on July 17, 2021, Plaintiff Rose's class vehicle experienced a brake failure due to the Brake Defect. (*Id.* ¶ 19.) Plaintiff Rose's class vehicle displayed a message on the left dash instrument panel that read: "Brake Fluid Level Low, Go To Dealer Slowly[.]" The nearest Ferrari dealer was more than 300 miles from his location. (*Id.*) Plaintiff Rose drove home, and by the time he reached his garage, Plaintiff Rose's vehicle completely lost braking capability. (*Id.*) Ferrari towed Plaintiff Rose's class vehicle to Continental AutoSports in Hinsdale, Illinois, an authorized Ferrari dealer, where it underwent repairs. (*Id.*) The service record states:

> Confirmed customer's concern. Removed trunk panels and found brake fluid resv completely empty. Raised vehicle and checked for leaks. No leaks found on any brake line or caliper. Removed trunk assembly, disconnected vac line on booster and used a piece of rubber hose to verify brake fluid has leaked into booster. Opened report with Ferrari. Replaced complete booster and master cylinder. [B]leed brakes and road test car. Brake now operates correctly.

(*Id.*)

On September 18, 2021, Plaintiff Rose submitted Complaint No. 11433534 to the NHTSA describing his experiences with the Brake Defect. (*Id.* ¶ 20.)

Less than two months later, on November 2, 2021, Plaintiff Rose received an email from Ferrari advising him that:

> Ferrari is investigating whether a problem exists in certain Model Year 2016-2018 vehicles… [that] are equipped with a braking system that could potentially leak brake fluid, which may lead to a total loss of braking capability, and result in an accident… [I]f a message appears on your dashboard, "Brake fluid level low, Go to dealer slowly", please pull off the road as soon as it is safe to do so. Then contact Ferrari Roadside Assistance… Your car will be taken to the nearest authorized Ferrari dealer and inspected free of charge.

> If necessary, Ferrari will perform any necessary repairs to your vehicle for free.

(*Id.* ¶ 21.) On November 9, 2021, Plaintiff Rose received a letter from Ferrari providing the same information as that set forth above in the November 2 email. (*Id.* ¶ 22.)

### 2. Van Carlucci

Plaintiff Van Carlucci ("Plaintiff Carlucci") is a New Jersey citizen. (*Id.* ¶ 23.) Plaintiff Carlucci purchased a 2005 Ferrari 430 Spider, VIN No. ZFFEW59A250142730, from CLS 123, LLC, 3135 Kennedy Blvd., North Bergen, NJ 07047 on November 23, 2019. (*Id.*) Prior to purchasing his class vehicle, Plaintiff Carlucci viewed and inspected the permanent certification label affixed by Ferrari and dated May 2005, that stated: "[t]his vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 24.) Plaintiff Carlucci, who owned two prior Ferraris, is familiar with Ferrari and its reputation for excellence in engineering, performance, and safety. (*Id.* ¶ 25.)

In June 2020, Plaintiff Carlucci had the brake fluids flushed at Scuderia Performante, located in Downingtown, Pennsylvania. (*Id.* ¶ 26.) Plaintiff Carlucci regularly had his class vehicle serviced by Anthony Sinnott and Tony Deremigio, who are Master Technicians at Scuderia Performante. (*Id.*)

At some point, Plaintiff Carlucci received a non-dated letter from Ferrari, informing him of the Brake Defect in his class vehicle. (*Id.* ¶ 27.) The letter stated that Ferrari would repair his vehicle but, the "replacement part is not yet available." (*Id.*) The letter further advised that if a message appeared on his dashboard stating, "Brake fluid level low, Go to dealer slowly," or the "brake failure warning" light illuminated, Plaintiff should pull off the road as soon as possible. (*Id.*) Thereafter, Plaintiff Carlucci received notice that the replacement part was available, but he

has not had the repair conducted because he is concerned the replacement may be less effective than the original brake fluid reservoir cap. (*Id.*)

Defendants did not disclose the Brake Defect to Plaintiff Carlucci before he purchased his class vehicle. (*Id.* ¶ 28.) Plaintiff Carlucci alleges Defendants failed to make such disclosure despite their exclusive knowledge of the Brake Defect. (*Id.*) Consequently, he purchased it on the reasonable, but mistaken, belief that the brakes were reliable. (*Id.*) He asserts that he reasonably expected his class vehicle was without defect and would not have bought it at the price he paid had he been aware of the Brake Defect. (*Id.*)

### 3. Nicholas DiSantis

Plaintiff Nicholas DiSantis ("Plaintiff DiSantis") is a Massachusetts citizen. (*Id.* ¶ 29.) In July 2020, Plaintiff DiSantis purchased a used 2010 Ferrari California, VIN ZFF65LJA5A0169549 from a private seller, Vintage Autos, located in Alabama. (*Id.*)

The private seller agreed to ship the class vehicle to Plaintiff DiSantis' residence in Hinsdale, Massachusetts. (*Id.* ¶ 30.) Plaintiff DiSantis viewed photos, viewed video of the vehicle over Apple's FaceTime, and conducted his purchase of the class vehicle entirely online from his home in Massachusetts. (*Id.*) Plaintiff DiSantis registered the class vehicle in Massachusetts upon accepting the class vehicle in Massachusetts, and paid Massachusetts sales tax on the class vehicle. (*Id.* ¶ 31.) Plaintiff DiSantis conducted routine maintenance and inspections at his local authorized Ferrari dealer, Ferrari of New England. (*Id.* ¶ 32.)

Before purchasing his class vehicle, Plaintiff DiSantis researched the performance and reliability of the class vehicle, including by visiting Ferrari's website. (*Id.* ¶ 33.) Plaintiff DiSantis observed Ferrari's reputation of manufacturing high-performance, luxury vehicles. (*Id.*) Prior to acceptance of the class vehicle, Plaintiff DiSantis viewed and inspected the Monroney label that

informed him of the make and model of the vehicle and provided detailed specifications concerning its braking system. (*Id.* ¶ 34.) The Monroney label also informed Plaintiff DiSantis that the vehicle was assembled in Maranello, Modena, Italy, then imported by Ferrari through Port Newark, and stored in a warehouse in Port Newark. (*Id.*) The Monroney label also stated that it had been affixed by Ferrari pursuant to the requirements of 15 U.S.C. § 1231, *et seq.*, which prohibited its "removal or alternation [sic] prior to delivery to the ultimate purchaser." (*Id.*)

Prior to acceptance of his class vehicle, Plaintiff DiSantis viewed and inspected the permanent certification label affixed by Ferrari and dated July 2009, which stated: "[t]his vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 35.)

At no time before Plaintiff DiSantis' purchase of his class vehicle did Defendants inform him of the Brake Defect. (*Id.* ¶ 36.) Plaintiff DiSantis alleges that he relied on Defendant's material omissions regarding the Brake Defect when purchasing his class vehicle and would not have purchased it or paid a premium price for it if he knew about the Brake Defect and the related safety and reliability issues. (*Id.* ¶ 37.)

### 4. Howard Hardwick

Plaintiff Howard Hardwick ("Plaintiff Hardwick") is a Florida citizen. (*Id.* ¶ 38.) Plaintiff Hardwick purchased a used 2018 Ferrari 488 GTB, VIN ZFF79ALA4J0231615, on February 18, 2020 from Black Horse Motors of Naples, located in Naples, Florida. (*Id.*) Prior to purchasing his class vehicle, Plaintiff Hardwick viewed and inspected the permanent certification label affixed by Ferrari and dated October 2017, which stated: "[t]his vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 39.) He also researched the performance and reliability of the class vehicle,

including by visiting Ferrari's website. (*Id.* ¶ 40.) Plaintiff Hardwick observed Ferrari's reputation of manufacturing high-performance, luxury vehicles. (*Id.*) At no time before Plaintiff Hardwick's purchase of his class vehicle did Defendants inform him of the Brake Defect. (*Id.* ¶ 41.)

On March 17, 2022, Plaintiff Hardwick brought his vehicle to Ferrari of Naples to have the cap and warning repair conducted. (*Id.* ¶ 42.) He received the replacement cap. (*Id.*) On December 11, 2022, Plaintiff Hardwick went to Sebring International Raceway to drive his class vehicle. (*Id.* ¶ 43.) When it was time for his session, Plaintiff Hardwick pressed his foot on the brake pedal prior to starting the car, and the pedal went right to the floor with no resistance. (*Id.*) Plaintiff Hardwick slowly drove the class vehicle to the course mechanic's trailer and found the brake fluid reservoir empty, with no indication of any fluid leakage. (*Id.*) Plaintiff Hardwick loaded the class vehicle onto his trailer and delivered it to Ferrari of Naples the next Monday. (*Id.*) Ferrari of Naples found the brake fluid had leaked into the brake booster and contacted the Ferrari factory in Italy, which requested the defective components be sent to it for evaluation. (*Id.*) After receipt of the parts, Ferrari paid for the repair. (*Id.*) On information and belief, the defective component was the defective master cylinder/brake booster assembly. (*Id.*)

On November 4, 2023, Plaintiff Hardwick went to Sebring International Raceway again. (*Id.* ¶ 44.) While driving, he approached a right-hand hairpin corner, and as he slowed down, the brakes in his class vehicle failed at Turn 7. (*Id.*) Plaintiff Hardwick could not attempt Turn 7 at the speed he was going. (*Id.*) When the brakes failed, he had just passed the escape route, so he took to the grass on the outside of the course, crashing into a thick wall of tires some distance from the track. (*Id.*) Plaintiff Hardwick's class vehicle was significantly damaged in the resulting crash. (*Id.* ¶ 45.) The initial estimate price for parts alone was approximately $114,000. (*Id.*) This did not include parts that Ferrari of Naples could not readily identify, plus $80,000 labor and painting.

(*Id.*) Because this repair was approaching the value of the class vehicle, Plaintiff Hardwick sold the class vehicle for approximately $90,000 to a repair center in California that rebuilds crashed Ferraris for resale. (*Id.*) Plaintiff Hardwick estimates the loss was at least $150,000. (*Id.*)

Plaintiff Hardwick alleges that he relied on Defendant's material omissions regarding the Brake Defect when purchasing his class vehicle. (*Id.* ¶ 45.) He asserts he would not have purchased or paid a premium price for the vehicle had he known about the Brake Defect and the related safety and reliability issues. (*Id.*)

### 5. Leonard Mauceli

Plaintiff Leonard Mauceli ("Plaintiff Mauceli") is a Florida citizen. (*Id.* ¶ 47.) Plaintiff Mauceli purchased a new 2017 Ferrari California T, VIN ZFF77XJA5H0223643, on January 6, 2017 from Ferrari/Maserati of Central New Jersey, a certified Ferrari dealer, located in Edison, New Jersey. (*Id.*)

Prior to purchasing his class vehicle, Plaintiff Mauceli viewed and inspected the Monroney label that informed him of the make and model of the vehicle and provided detailed specifications concerning its braking system. (*Id.* ¶ 48.) The Monroney label stated the vehicle was assembled in Maranello, Modena, Italy, then imported by Ferrari through Port Newark, and stored in a warehouse in Port Newark. (*Id.*) The Monroney label stated that it had been affixed by Ferrari pursuant to the requirements of 15 U.S.C. § 1231, *et seq.*, which prohibited its "removal or alternation [sic] prior to delivery to the ultimate purchaser." (*Id.*) Before purchasing his class vehicle, Plaintiff Mauceli viewed and inspected the permanent certification label affixed by Ferrari and dated November 2016, which stated: "[t]his vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 49.) He also researched the performance and reliability of the class vehicle, including

visiting Ferrari's website. (*Id.* ¶ 50.) Plaintiff Mauceli observed Ferrari's reputation for manufacturing high-performance, luxury vehicles. (*Id.*) Defendants did not inform Plaintiff Mauceli of the Brake Defect prior to his purchase of his class vehicle. (*Id.* ¶ 51.) Plaintiff Mauceli alleges that he relied on Defendant's material omissions regarding the Brake Defect when purchasing his class vehicle. (*Id.* ¶ 52.) He asserts he would not have purchased the class vehicle or paid a premium price for it if he knew about the Brake Defect and the related safety and reliability issues. (*Id.*)

### 6. Anthony Mirti

Plaintiff Anthony Mirti ("Plaintiff Mirti") is a Florida citizen. (SAC ¶ 53.) Plaintiff Mirti purchased a certified pre-owned 2018 Ferrari 488 Spider, VIN ZFF80AMA0J0234234 (Mirti's class vehicle), in July 2019 from an authorized Ferrari dealership, S & W Sports Cars, Inc. d/b/a Ferrari Maserati of Atlanta ("Ferrari of Atlanta"), from his Florida home. (*Id.*)

Plaintiff Mirti found a listing for the class vehicle through Ferrari's website and online research. (*Id.* ¶ 54.) On June 17, 2019, Plaintiff Mirti contacted Ferrari of Atlanta and requested information regarding the class vehicle. (*Id.*) Plaintiff Mirti informed them he was a Florida resident and provided Ferrari of Atlanta with his contact information and address. (*Id.*) That same day, Ferrari of Atlanta sent Plaintiff Mirti an information packet via iPacket, which Ferrari described as a "customized vehicle information packet we built for you." (*Id.* ¶ 55.) Inside the information packet, Plaintiff Mirti viewed and inspected a Monroney label, which provided detailed specifications concerning the braking system. (*Id.* ¶ 56.) The Monroney label informed Plaintiff Mirti that the vehicle was assembled in Maranello, Modena, Italy. (*Id.*) The Monroney label also stated that it had been affixed by Ferrari NA pursuant to the requirements of 15 U.S.C.

§ 1231, *et seq.*, which prohibited its "removal or alternation [sic] prior to delivery to the ultimate purchaser." (*Id.*)

On June 18, 2019, Ferrari of Atlanta utilized Ferrari SpA's dealership database in Italy to access Ferrari.IT, to send options to Plaintiff Mirti in Florida on selections for his vehicle. (*Id.* ¶ 57.) Over the next several days, an associate of Ferrari of Atlanta communicated with Plaintiff Mirti and sent him information including photos, comments, the CarFax, Vehicle Report, Warranty Information, AutoCheck, CPO Warranty, Mechanical Check, and the About Us of Ferrari of Atlanta. (*Id.* ¶ 58.) Plaintiff Mirti and Ferrari then discussed pricing on the class vehicle and reached an agreement in principle on the price in Florida. (*Id.* ¶ 59.)

On June 19, 2019, Ferrari of Atlanta performed a Ferrari 101 Point Check List under Ferrari SpA's Ferrari Approved Certified Pre-Owned Program whereby the class vehicle was certified that its "Brake Operation" and "Vehicle Performance" were satisfactory. (*Id.* ¶ 60.) That same day, an associate of Ferrari stated to Plaintiff Mirti: "If you want to send me a copy of your driver's license and what county you are in I can contact the State of Florida and verify your tax tag and title fees[.]" (*Id.* ¶ 61.) The associate sent additional photos to Plaintiff Mirti. (*Id.*)

On or around June 20, 2019, Plaintiff Mirti visited his bank in Florida and obtained a Cashier's Check for $10,000.00 to be used for the deposit on the class vehicle. (*Id.* ¶ 62.) On June 20, 2019, Plaintiff Mirti flew to Ferrari of Atlanta to test drive the class vehicle. (*Id.* ¶ 63.) After the test drive, Plaintiff Mirti provided Ferrari of Atlanta with the Cashier's Check and signed the required documents. (*Id.*) Prior to purchasing his class vehicle, Plaintiff Mirti viewed and inspected the permanent certification label affixed by Ferrari SpA dated February 2018, that stated: "[t]his vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 64.)

Ferrari of Atlanta agreed to ship the class vehicle to Plaintiff Mirti's residence in Vero Beach, Florida. (*Id.* ¶ 65.) Ferrari of Atlanta also agreed to handle tax tags and license fees with the State of Florida. (*Id.*) Ferrari of Atlanta sent instructions for Plaintiff Mirti to wire the total payment to their bank in Jackson, Mississippi. (*Id.* ¶ 66.) Over the next several days, a wire transfer was completed from Plaintiff Mirti's financial accounts in Florida to Ferrari of Atlanta's accounts in Mississippi. (*Id.*) On July 3, 2019, Ferrari of Atlanta sent Plaintiff Mirti an invoice for the amount left outstanding on the class vehicle for licensing to the State of Florida. (*Id.* ¶ 67.) On July 8, 2019, the outstanding balance on the class vehicle was paid, and the transaction for the purchase of the class vehicle was completed. (*Id.* ¶ 68.) Plaintiff Mirti paid sales tax to the State of Florida on his class vehicle. (*Id.* ¶ 69.)

Thereafter, Plaintiff Mirti conducted routine maintenance and inspections at his local authorized Ferrari dealer, Ferrari Maserati of Central Florida, Inc. ("Ferrari of Orlando"). (*Id.* ¶ 70.) Ferrari of Orlando failed to inform Plaintiff Mirti of the dangerous safety defect in his class vehicle during each inspection and prior to experiencing the Brake Defect. (*Id.* ¶ 71.)

On September 7, 2021, Plaintiff Mirti was driving his class vehicle and had traveled approximately 8 to 10 miles when the car suddenly displayed the message: "Brake Fluid Level Low, Go To Dealer Slowly[.]" (*Id.* ¶ 72.) As Plaintiff Mirti slowed the car from approximately 45 miles per hour, the brakes did not provide sufficient stopping power, but with downshifting and low braking force, he was able to regain minimal control of the car. (*Id.*) He attempted to get home while driving 5 to 10 miles per hour. (*Id.*) However, within about three miles, the brakes failed. (*Id.*) At the time of failure, the vehicle's mileage was approximately 6,787. (*Id.*)

14

Once the brakes failed, the vehicle ran a stop sign before Plaintiff Mirti was able to maneuver his vehicle off the road into a parking lot. (*Id.* ¶ 73.) Plaintiff Mirti was able to stop the class vehicle by rolling into an uphill parking spot and hitting a concrete parking barrier. (*Id.*)

To keep the car from rolling backward, Plaintiff Mirti turned the engine off. (*Id.*) When trying to activate the electronic hold function to keep the car from rolling backward, the car displayed the message: "Depress Brake Pedal to Activate Hold." (*Id.* ¶ 74.) However, when the brake pedal was fully depressed, the function would not activate, even though it worked properly prior to the brake failure (and subsequent to repair). (*Id.*) The car was towed to the dealer and repaired under warranty. (*Id.*) The service manager reported that the master cylinder leaked brake fluid into the vacuum booster. (*Id.*) Plaintiff Mirti requested that the failed parts be returned to him. (*Id.*) However, the service manager advised that failed parts replaced under warranty are returned to Ferrari. (*Id.*) Plaintiff Mirti is concerned the replacement master cylinder in his class vehicle is defective, as there appears to be no change in the design of the replacement part he received. (*Id.*)

Plaintiff Mirti's service invoice from September 8, 2021, prepared by a service manager at Ferrari of Orlando, reported that the Master Cylinder leaked brake fluid into the vacuum booster. (*Id.* ¶ 75.) The invoice states as follows:

> Checked for leaks, no external leaks found, removed luggage compartment and checked booster, found fluid in booster. Removed and replaced booster/master servo assembly. Checked labor tree on labor op for booster and found bleeding not included. Performed brake bleed multiple times using DEIS to get all air out of system. Checked operation of brakes, noted that brake light was illuminated all the time. Removed brake switch and pulled plunger to perform length calibration due to booster replacement. Brake lights operated normally.

(*Id.*) The replacement part identified by Ferrari of Orlando was Part Number 2440102EA Brake Servo Compl. with Pump, a part manufactured and sold by Bosch GmbH. (*Id.* ¶ 76.)

### 7. Iliya Nechev

Plaintiff Iliya Nechev ("Plaintiff Nechev") is a California citizen. (*Id.* ¶ 77.) Nechev purchased a used 2010 Ferrari 458 Italia, VIN: ZFF67NFA1A0175749 (Nechev's class vehicle), in December 2020 from Ferrari of Washington, an authorized Ferrari dealership, located at 45235 Towlern Place, Sterling, Virginia 20166. (*Id.*) From his residence in California, Plaintiff Nechev purchased the class vehicle with approximately 28,000 miles on it. (*Id.*)

Plaintiff Nechev found a listing for the class vehicle through Ferrari's website and other online research, ultimately finding a listing for the class vehicle on Autotrader.com. (*Id.* ¶ 78.) Plaintiff Nechev then emailed and called Ferrari of Washington for additional information. (*Id.*) Plaintiff Nechev communicated with sales representatives from Ferrari of Washington including Casey Francis, Steven Meyer, and James Pollack. (*Id.* ¶ 79.) The Ferrari representatives provided Plaintiff Nechev with detailed paperwork and information packets for the class vehicle. (*Id.*)

Prior to purchasing his class vehicle, Plaintiff Nechev viewed and inspected the Monroney label, which informed him of the vehicle's make and model and provided detailed specifications concerning its braking system. (*Id.* ¶ 80.) The Monroney label also informed Plaintiff Nechev that his vehicle was assembled in Maranello, Modena, Italy and then imported to the United States by Ferrari. (*Id.*) The Monroney label also stated that it had been affixed by Ferrari pursuant to the requirements of 15 U.S.C. § 1231, *et seq.*, which prohibited its "removal or alternation [sic] prior to delivery to the ultimate purchaser." (*Id.*)

Plaintiff Nechev, while residing in California, reviewed all materials sent to him by Ferrari of Washington. (*Id.* ¶ 81.) Plaintiff Nechev and Ferrari of Washington also discussed the price of the class vehicle and reached an agreement on the price. (*Id.* ¶ 82.) Plaintiff Nechev made these communications from his residence in California. (*Id.*) While in California, Plaintiff Nechev

signed the purchase agreement for the class vehicle. (*Id.* ¶ 83.) Plaintiff Nechev paid California sales tax for the class vehicle. (*Id.* ¶ 84.)

Prior to Plaintiff Nechev's acceptance of the class vehicle, he also viewed and inspected the permanent certification label affixed by Ferrari and dated July 2010, which stated: "[t]his vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above." (*Id.* ¶ 85.)

From the day Plaintiff Nechev received his class vehicle, he complained of brake issues. (*Id.* ¶ 86.) The class vehicle would experience partial or total loss of braking capability. (*Id.*) Plaintiff Nechev came close to an accident several times. (*Id.*) On one occasion, the day after he accepted delivery of the vehicle, Plaintiff Nechev was driving downhill at approximately 50 miles per hour, and while preparing to take a 90-degree righthand turn, he pressed down on the brakes, but the class vehicle did not slow down. (*Id.*) Despite the brake pedal being hard, there was no brake pressure. (*Id.*) Plaintiff Nechev managed to slow the vehicle down by repeatedly downshifting as he entered the corner. (*Id.*) Plaintiff Nechev immediately complained of the issue to Ferrari of Washington, but he was informed that this issue was "normal." (*Id.*)

Plaintiff Nechev attempted to have the vehicle repaired at Ferrari of San Diego, but he was informed there was nothing wrong with his class vehicle. (*Id.* ¶ 87.) Plaintiff Nechev was informed "Ferrari ceramic brakes feel different than other cars[']" brakes, that he "should just get used to them[,]" and that "there was absolutely no issues with the brakes in any way." (*Id.*) However, in or around April 2021, Plaintiff Nechev decided the issue was too dangerous to leave unrepaired, so he ordered hoses with integrated check valves, along with a new brake booster and master cylinder. (*Id.* ¶ 88.)

First, Plaintiff Nechev replaced the vacuum line in his class vehicle, which had to be snaked behind the engine and around the alternator. (*Id.* ¶ 89.) Plaintiff Nechev attempted this repair first because the Ferrari 458 brake system is "relatively straightforward and common automotive design, using vacuum pressure from the intake manifold to activate the brake servo (booster) which pushes the piston of the master cylinder delivering brake fluid at high pressure to the brakes." (*Id.*) He asserts the hard lines from the intake have several check valves and are generally known to fail over time by not providing enough vacuum to the brake booster. (*Id.*) Plaintiff Nechev states this replacement was not easy, and it ultimately did not repair the issue in his class vehicle. (*Id.*)

As to the other point of failure, the master cylinder, Plaintiff Nechev then had to disassemble the front end of his vehicle to reach the master cylinder/brake booster assembly. (*Id.* ¶ 90.) According to Plaintiff Nechev, the master cylinder seal can leak brake fluid into the brake booster, damaging the diaphragm inside. (*Id.*) After reaching the master cylinder/brake booster assembly, Plaintiff Nechev discovered a small pool of brake fluid, leaked by a failed master cylinder seal. (*Id.* ¶ 91.) Once those parts were replaced, Plaintiff Nechev reassembled the front end of his class vehicle and went for a test drive. (*Id.*) Plaintiff Nechev found that after replacing the master cylinder/brake booster assembly, he no longer experienced issues with braking capability. (*Id.*) Ferrari did not reimburse Plaintiff Nechev for any of the costs or damages associated with his class vehicle. (*Id.*)

After replacing the components in his class vehicle, Plaintiff Nechev submitted an "invoice" with his expenses to Ferrari—as part of Ferrari's recall campaign—and did not receive reimbursement for his out-of-pocket expenses, even after providing Ferrari notice of his claims against them. (*Id.* ¶ 92.)

Through its dealer agreements and other methods, Ferrari has control over the consumer-facing information and disclosures provided to consumers, such as window stickers and other legally required notices. (*Id.* ¶ 93.) Plaintiff Nechev alleges that as a certified Ferrari dealership, Ferrari of Washington acted as Defendant's agent regarding the disclosures and other representations made to consumers about the characteristics of its class vehicles. (*Id.*)

### D. The Second Amended Complaint and Present Motion

On June 3, 2024, Plaintiffs filed the Second Amended Complaint. (ECF 160, "SAC.") The SAC contains twenty counts: Count 1: violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; Count 2: fraudulent concealment or omission; Count 3: negligent misrepresentation; Count 4: unjust enrichment; Count 5: breach of the implied warranty of merchantability, Cal. Com. Code §§ 2314 and 10212; Count 6: violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*; Count 7: violations of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; Count 8: violations of California's Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.*; Count 9: breach of express warranty pursuant to Fla. Stat. §§ 672.313 and 680.21; Count 10: breach of implied warranty of merchantability pursuant to Fla. Stat. §§ 672.314 and 680.212; Count 11: violations of the Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Count 12: breach of express warranty, Ga. Code Ann. § 11-2-313, 11-2A-210; Count 13: breach of implied warranty of merchantability, Ga. Code Ann. § 11-2-314, 11-2A-212; Count 14: violation of Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), Ga. Code Ann. § 10-1-370, *et seq.*; Count 15: violation of Georgia Fair Business Practices Act ("GFBPA"), Ga. Code Ann. § 10-1-390, *et seq.*; Count 16: breach of express warranty, Mass Gen. Laws ch. 106.A §§ 2-313 & 2A-210; Count 17: breach of implied warranty of merchantability, Mass Gen. Laws ch. 106 §§ 2-314

& 2A-212; Count 18: violation of Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws ch. 93A, § 1, *et seq*.; Count 19: breach of express warranty, N.J. Stat. Ann. §§ 12A:2-313, 12A:2A-210; and Count 20: breach of implied warranty of merchantability, N.J. Stat. Ann. §§ 12A:2-314, 12A:2A-212. On July 17, 2024, Ferrari moved to dismiss all counts. (ECF 170.)

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state

"a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III.    ANALYSIS

#### A. Nationwide Class

Plaintiffs bring four claims on behalf of a purported nationwide class: Count 1: violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* (SAC ¶¶ 273-89); Count

2: fraud by concealment or omission (*id.* ¶¶ 290-302); Count 3: negligent misrepresentation (*id.* ¶¶ 303-13); and Count 4: unjust enrichment (*id.* ¶¶ 314-24). Defendant argues the Court should dismiss the nationwide class allegations because Plaintiffs lack standing to assert claims on behalf of putative classes under the laws of states where no named plaintiff is located. (Def. Br. at 11.)

"[T]here is disagreement in this district over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states." *Rains v. Jaguar Land Rover N. Am., LLC*, No. 22-4370, 2023 WL 6234411, at *4 (D.N.J. Sept. 26, 2023) (quoting *Cohen v. Subaru of Am., Inc.*, No. 20-08442, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022)). The Court agrees with the authority finding plaintiffs must demonstrate standing for each claim they seek to assert. *Rains*, 2023 WL 6234411, at *4; *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 U.S. Dist. LEXIS 59302, at *20 (D.N.J. Apr. 1, 2024); *Craft v. BMW of N. Am., LLC*, No. 24-06826, 2024 U.S. Dist. LEXIS 232160, at *22-23 (D.N.J. Dec. 23, 2024) (dismissing nationwide claims for lack of standing); *Reinkraut v. FCA US LLC*, No. 23-02792, 2024 U.S. Dist. LEXIS 159533, at *25-26 (D.N.J. Sep. 5, 2024) (dismissing nationwide claims for lack of standing); *see also Ponzio v. Mercedes-Benz, USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020). "The requirements for standing do not change because Plaintiffs fashion their claims in a purported nationwide class." *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 U.S. Dist. LEXIS 187865, at *21 (D.N.J. Oct. 19, 2023) (citing *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("The requirements for standing do not change in the class action context.")). Indeed, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Tijerina*, 2023 U.S. Dist. LEXIS 187865, at *21 (quoting *Lewis v. Casey*,

518 U.S. 343, 357 (1996) (internal quotation marks omitted)). Otherwise, "a plaintiff would be able to bring a class action complaint under the laws of nearly every state . . . without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *Ponzio*, 447 F Supp. 3d at 223. Therefore, Plaintiffs are limited to asserting claims on behalf of individuals in states where at least one named Plaintiff has standing to assert a claim. *See Tijerina*, 2023 U.S. Dist. LEXIS 187865, at *21; *Rains*, 2023 WL 6234411, at *4; *Cohen*, 2022 WL 721307, at *6; *Snowdy*, 2024 U.S. Dist. LEXIS 59302, at *20. Therefore, as asserted by the purported nationwide class, Counts 1, 2, 3, and 4 are dismissed without prejudice.

## B. Common Law Claims

In the alternative to asserting claims via a nationwide class, Plaintiffs bring the common law claims—Count 2, fraud by concealment or omission; Count 3, negligent misrepresentation; and Count 4, unjust enrichment—individually and on behalf of their respective state subclasses pursuant to California, Florida, Georgia, Massachusetts, and New Jersey common law. Defendant moves to dismiss Count 2 and Count 3 on several bases, arguing the claims are barred by the statute of limitations; the economic loss doctrine; a failure to plead actionable misrepresentation or reliance; a failure to plead presale knowledge; and a failure to plead duty to disclose. (Def. Br. at 11-12.) Defendant moves to dismiss Count 4 for several reasons pursuant to state law, including preclusion by express warranty and contract, lack of privity, and the existence of adequate legal remedies. (*Id.* at 29-30.) The Court addresses each count in turn.

### 1. Fraudulent Omission or Concealment (Count 2)

Under the laws of each state at issue here, the basic elements of a fraudulent omission or concealment claim are generally: (1) defendant owed a duty to disclose a material fact; (2)

concealment or failure to disclose by defendant; (3) defendant knew or should have known the information should have been disclosed; (4) reliance by plaintiff (or inducement of plaintiff to act); and (5) damages. *See Nevarez v. GM, LLC*, No. 24-1079, 2024 U.S. Dist. LEXIS 112940, at *12 (C.D. Cal. June 26, 2024) (explaining that in California, "to sustain a fraudulent concealment claim, a plaintiff must allege (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted otherwise if she had known of the concealment or suppression of the fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage."); *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015) (explaining that under Florida law, the elements of a fraudulent concealment claim are (1) concealment or failure to disclose a material fact; (2) that the defendant knew or should have known the material fact should be disclosed; (3) that the defendant knew its concealment of or failure to disclose the material fact would induce the plaintiffs to act; (4) the defendant had a duty to disclose the material fact; and (5) plaintiffs detrimentally relied on the misinformation); *Meyer v. Waite*, 606 S.E.2d 16, 20 (Ga. Ct. App. 2004) (explaining that under Georgia law, a buyer who alleges fraudulent concealment must allege (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages, and as to (4), must allege that he or she could not have discovered the alleged defect in the exercise of due diligence.); *Lilliston v. Regions Bank*, 653 S.E.2d 306, 310 (Ga. Ct. App. 2008) (explaining that in Georgia, "[a] party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact."); *AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 928 F.3d 110, 122 (1st Cir. 2019) ("Under Massachusetts law, to recover

on fraudulent [omission] claims, a plaintiff must establish that defendants: (1) [omitted a] material fact; (2) with knowledge of its falsity; (3) for the purpose of inducing the plaintiff[] to act on this representation; (4) that the plaintiff[] reasonably relied on the representation as true; and (5) that [the plaintiff] acted upon it to their damage." (internal quotation marks and citation omitted)); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). (explaining that to state a common law fraud claim under New Jersey law, a plaintiff must plead (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages.); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (noting that in New Jersey, an omission can amount to fraud if a party has a duty to disclose);

### i. Statute of Limitations (California and Massachusetts)

Defendant first argues the common law fraudulent omission or concealment claims must be dismissed to the extent they are brought under California and Massachusetts law because the statute of limitations has run. (Def. Br. at 11-12.)

**California:** In California, common law fraud claims are subject to a three-year statute of limitations. *Finney v. Ford Motor Co.*, No. 17- 06183, 2018 U.S. Dist. LEXIS 93823, at *5 (N.D. Cal. June 4, 2018) (citing Cal. Civ. Code § 1783). Defendant argues that California Plaintiff Nechev's fraudulent concealment claim accrued when he bought his vehicle in December 2020, and expired three years later, in December 2023, before he filed suit on March 18, 2024. (Def. Br. at 12 (citing SAC ¶ 77).) In opposition, Plaintiff Nechev asserts "tolling is entirely plausible because Ferrari knew about the Brake Defect and never disclosed it, and actively concealed it by issuing a series of 'remedies' that Ferrari knew to be ineffective." (Opp. at 11 (citing SAC ¶¶ 117-27).)

California law allows tolling of the statute of limitations under the discovery rule—that the statute of limitations does not begin to run until the plaintiff discovered or had notice of all facts which are essential to the cause of action. *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 U.S. Dist. LEXIS 93823, at *6 (N.D. Cal. June 4, 2018). To rely on the discovery rule, a plaintiff must plead facts showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence . . . . However, mere conclusory assertions that delay in discovery was reasonable are insufficient." *Id.* (quoting *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. 05-04726, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008)). Plaintiff Nechev asserts that "[f]rom the day Plaintiff Nechev received his Class Vehicle, he complained of brake issues whereby the Class Vehicle would experience partial or total loss of braking capability." (SAC ¶ 86.) As pled, Plaintiff Nechev has not otherwise detailed specific facts about the time and manner of discovery and the inability to have made the earlier discovery despite reasonable diligence such that the discovery rule should apply.

California law also allows tolling of the statute of limitations under the fraudulent concealment doctrine. *Finney*, 2018 U.S. Dist. LEXIS 93823, at *6-7. The fraudulent concealment doctrine holds that "[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007). "[T]he fraudulent concealment by the defendant of a cause of action tolls the relevant statute of limitations, which does not begin to run until the aggrieved party discovers the existence of the cause of action." *Finney*, 2018 U.S. Dist. LEXIS 93823, at *7 (quoting *Community Case v. Boatwright*, 1177 Cal. Rptr. 657, 663 (Cal. Ct. App. 1981)). Because Plaintiff Nechev has not pled

when he discovered his cause of action such that a tolling exception should apply, the Court dismisses the California common law fraudulent concealment claim without prejudice.

**Massachusetts:** In Massachusetts, the statute of limitations for fraudulent omissions claims is three years. *Petricca v. Simpson*, 862 F. Supp. 13, 16 (D. Mass. 1994). Plaintiff DiSantis alleges his damages stem from overpayment at the time he purchased his used 2010 Ferrari California in July 2020. (SAC ¶¶ 29, 301.) Plaintiff DiSantis filed suit on June 3, 2024, which is more than three years after purchase. Defendant argues his fraudulent concealment claim is therefore barred. (Def. Br. at 11-12.) In opposition, Plaintiff DiSantis asserts "tolling is entirely plausible because Ferrari knew about the Brake Defect and never disclosed it, and actively concealed it by issuing a series of 'remedies' that Ferrari knew to be ineffective." (Opp. at 11 (citing SAC ¶¶ 117-27).)

"Under Massachusetts law '[t]he limitations period begins to run "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct."'" *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 284 (D. Mass. 2018) (quoting *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006) (quoting *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205-6, 557 N.E.2d 739 (Mass. 1990))). Pursuant to the discovery rule, "the limitations period is tolled until events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed." *Pagliaroni*, 310 F. Supp. 3d at 284 (internal quotation marks and citations omitted). This discovery must include two components: knowledge that one has been injured and knowledge of the injury's cause, such "that plaintiff has been harmed as a result of the defendant's conduct." *Id.* (internal quotation marks and citations omitted). Here, Plaintiff DiSantis does not include allegations sufficient to establish that the discovery rule applies. Moreover, in opposition,

Plaintiff DiSantis has not analyzed or raised other tolling exceptions to the statute of limitations. Accordingly, the Court dismisses the Massachusetts common law fraudulent concealment claim without prejudice.

### ii.   Economic Loss Doctrine

Next, Defendant argues the economic loss rule bars Plaintiffs' claims for fraudulent omission or concealment. The economic loss doctrine generally holds that 'purely economic losses are not recoverable in tort.'" *Cohen*, 2022 WL 721307, at *31 (quoting *Ponzio*, 447 F. Supp. 3d at 236, 239); *see Paws Holdings, LLC v. Daikin Indus., Ltd.*, No. 116-058, 2017 WL 706624, at *12 (S.D. Ga. Feb. 22, 2017) (explaining Georgia's economic loss rule bars recovery in tort for purely economic losses). In its prior motion to dismiss, Defendant previously raised the economic loss doctrine as to the negligent misrepresentation and unjust enrichment claims, but not as to the fraudulent concealment claim. Accordingly, the Court will not analyze the economic loss doctrine as to the New Jersey fraudulent omission or concealment claim.[4]

**Florida**: Plaintiffs Mirti and Hardwick seek economic damages for their fraudulent concealment claims, which are premised on the same allegations as their breach of warranty claims. Courts applying Florida law have concluded that fraudulent concealment is not a recognized exception to Florida's economic loss rule. *In re Takata Airbag Prod, Liab. Litig.*, 193 F. Supp. 3d 1324, 1339 (S.D. Fla. 2016) (collecting cases). Specifically, where fraudulent concealment or negligent misrepresentation claims are premised on the same allegations as breach of warranty claims, Courts apply the economic loss rule and dismiss the fraudulent concealment and negligent misrepresentation claims. *Id.*; *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d

---

[4] Generally, "[a] party that makes a motion under [Rule 12] must not make another motion under [the] rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

1090, 1104 (S.D. Fla. 2019) (finding economic loss doctrine barred plaintiff's fraudulent concealment claim premised on the same allegations as breach of warranty claim). Therefore, the Court finds that the economic loss doctrine bars the Florida fraudulent concealment claim.

**Georgia:** Under Georgia law, the economic loss rule provides that "a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *GE v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005). Under the economic loss rule, "a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property[.]" *Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*, 57 F. Supp. 3d 1389, 1395 (N.D. Ga. 2014) (quoting *GE*, 608 S.E.2d at 637). However, Georgia law "recognizes an exception to the economic loss rule, known as the misrepresentation exception, under which '[o]ne who supplies information during the course of his business' owes an independent duty of reasonable care to parties who rely on that information and use the information as the supplier intended." *Sowa v. Mercedes-Benz Grp. AG Mercedes-Benz USA, LLC*, No. 23-636, 2024 U.S. Dist. LEXIS 235577, at *95-96 (N.D. Ga. Dec. 31, 2024) (quoting *Monopoli v. Mercedes-Benz USA, LLC*, No. 21-01353, 2022 U.S. Dist. LEXIS 24353, at *43 (N.D. Ga. Feb. 10, 2022) (quoting *Holloman v. D.R. Horton*, 241 Ga. App. 141, 524 S.E.2d 790, 796 (Ga. Ct. App. 1999))). This exception applies to fraud claims alleging misrepresentation as well as concealment. *Holloman*, 524 S.E.2d at 797 ("The economic loss rule is inapplicable in the presence of passive concealment or fraud."). The economic loss rule therefore does not bar Plaintiff Rose's fraudulent concealment claim. *See, e.g.*, *Monopoli*, 2022 U.S. Dist. LEXIS 24353, at *43 (finding fraudulent concealment claims fell within Georgia's exception to economic loss rule).

### iii.  Reliance

29

Defendant next argues the fraudulent omission and concealment claims must be dismissed because Plaintiffs failed to plead reliance. Plaintiffs assert that Defendant is precluded from raising the reliance-based argument now as it failed to raise this argument in prior motions to dismiss. (Opp. at 11-12.) The Court agrees with Plaintiffs. Generally, "[a] party that makes a motion under [Rule 12] must not make another motion under [the] rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "Essentially, 'Rule 12(g)(2) requires the Court to entertain only those arguments made by Defendants that were not previously available to them.'" *JD Glob. Sales, Inc. v. Jem D Int'l Partners, LP*, No. 21-19943, 2023 U.S. Dist. LEXIS 122893, at *27 (D.N.J. July 17, 2023) (quoting *Omodunbi v. Gordin & Berger*, P.C., No. 17-7553, 2021 WL 5277203, *2 (D.N.J. Nov. 12, 2021)). The procedural bar covers all successive motions to dismiss for failure to state a claim, *Leyse v. Bank of Am. Nat. Ass'n,* 804 F.3d 316, 321 (3d Cir. 2015), and applies with equal force to motions to dismiss an amended complaint. *JD Glob. Sales, Inc.*, 2023 U.S. Dist. LEXIS 122893, at *27-28. The Court will not dismiss the fraudulent concealment or omissions claims on this basis.[5]

### iv. No Presale Knowledge

Defendant next argues the fraudulent omission or concealment claims must be dismissed because Plaintiffs failed to sufficiently plead presale knowledge. (Def. Br. at 16-19.) In opposition, Plaintiffs note that this Court previously found Plaintiffs' allegations sufficient to establish presale knowledge at this stage. (Opp. at 12 (citing ECF 144 at 10).) Plaintiffs' allegations are still sufficient, and the fraudulent omissions or concealment claims will not be dismissed on this basis.

---

[5] Furthermore, Plaintiffs plead reliance. (SAC ¶¶ 97, 283-84, 363, 458); *see Sowa v. Mercedes-Benz Grp. AG Mercedes-Benz USA, LLC*, No. 23-636, 2024 U.S. Dist. LEXIS 235577, at *97 (N.D. Ga. Dec. 31, 2024) (finding reliance where Plaintiffs allege "[t]hey 'would not have purchased Class Vehicles, or would have paid less for them' had they known of the concealed Rear Subframe Defect.").

### v. No Duty to Disclose

This Court previously found Plaintiffs sufficiently pled Ferrari had a duty to disclose under New Jersey common law, and Plaintiffs have added additional allegations. (*See* ECF 144 at 7.)[6] Accordingly, the New Jersey fraudulent concealment claim will not be dismissed on this basis. As to the Georgia fraudulent concealment claim, Defendant argues a duty to disclose exists only when the parties have a fiduciary-like relationship. (Def. Br. at 19-20.) However, under Georgia law,

> a duty to disclose may arise from the confidential relations of the parties or from the particular circumstances of the case. Thus, a duty to disclose may exist even without a confidential relationship if the particular circumstances of the case create the duty. The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.

*Bolling v. Mercedes-Benz USA, LLC*, No. 23-671, 2025 U.S. Dist. LEXIS 5774, at *15 (N.D. Ga. Jan. 10, 2025) (citation omitted). Here, Plaintiffs allege Ferrari concealed an intrinsic quality of the vehicles—that the brakes were defective—which Plaintiffs could not discover by the exercise of ordinary care. (SAC ¶ 189.) Accordingly, the Court will not dismiss the Georgia fraudulent concealment claim.

Defendant's motion to dismiss Count 2 is granted to the extent the claims are brought under California, Florida, and Massachusetts law, but denied to the extent the claims are brought under Georgia and New Jersey law.

### 2. Negligent Misrepresentation (Count 3)

---

[6] New Jersey law imposes a duty to disclose when a defendant has made a partial disclosure. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 U.S. Dist. LEXIS 70299, at *62 (D.N.J. May 8, 2017) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) ("where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true")). As stated in this Court's prior opinion, Plaintiffs sufficiently allege partial disclosure.

Defendant moves to dismiss each negligent misrepresentation claim on several grounds. The Court will address each argument in turn.

### i. Statute of Limitations (California and Massachusetts)

**California:** "In California, negligent misrepresentation requires '(1) a misrepresentation, (2) with no reasonable ground to believe it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage.'" *Wu v. Mt. Hawley Ins.*, No. 11-01323, 2011 U.S. Dist. LEXIS 124551, at *13 (N.D. Cal. Oct. 27, 2011) (quoting *Dairy Am. v. N.Y. Marine & Gen. Ins. Co.*, No. 07-0537, 2010 U.S. Dist. LEXIS 31846, at *30-31 (E.D. Cal. Apr. 1, 2010)). Defendant argues Plaintiff Nechev's negligent misrepresentation claim is barred by a three-year statute of limitations. (Def. Br. at 11-12.)[7] For the reasons set forth in Section III(B)(1)(i), Plaintiff Nechev's negligent misrepresentation claim is dismissed without prejudice.

**Massachusetts:** To establish negligent misrepresentation under Massachusetts law, a plaintiff must show a defendant "(1) in the course of [its] business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information[.]" *First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006). Defendant argues Plaintiff DiSantis' negligent misrepresentation claim is barred by a three-year statute of limitations. (Def. Br. at 11-12.) In Massachusetts, negligent misrepresentation claims are governed by a three-year statute of

---

[7] In California, the statute of limitations period for negligent misrepresentation claims depends on the facts and circumstances of the case. *Biovill Co. Ltd. v. Oh*, No. 23-07920, 2024 U.S. Dist. LEXIS 76805, at *14 (C.D. Cal. Apr. 25, 2024). If the allegations in the complaint more closely resemble fraud rather than negligence, the three-year period rather than the two-year period will govern. *Id.* Here, the allegations in the SAC more closely resemble fraud, and accordingly, the three-year period governs.

limitations. *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 284 (D. Mass. 2018) (citing Mass. Gen. L. c. 260, § 2A). For the reasons set forth in Section III(B)(1)(i), Plaintiff DiSantis' negligent misrepresentation claim is dismissed without prejudice.

### ii. Economic Loss Doctrine

**Florida:** To establish negligent misrepresentation under Florida law, a party must prove: "(1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation." *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1250 (S.D. Fla. 2021) (quoting *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017)). Defendant argues Plaintiffs Mirti and Hardwick's negligent misrepresentation claims are barred by the economic loss doctrine. (Def. Br. at 22.) For the reasons set forth in Section III(B)(1)(ii), Plaintiffs Mirti and Hardwick's negligent misrepresentation claims are dismissed without prejudice. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013) (dismissing negligent misrepresentation claim under Florida law as barred by the economic loss doctrine).

**Georgia:** "Under Georgia law, a claim for negligent misrepresentation requires: '(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'" *Heath v. ILG Techs.*, LLC, 707 F. Supp. 3d 1371, 1390-91 (N.D. Ga. 2020) (quoting *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas*, 479 S.E.2d 727, 729 (Ga. 1997)). "Georgia law recognizes an exception to the economic-loss rule where one negligently supplies false information in connection with a transaction in which he has

a pecuniary interest and that information is justifiably relied upon by a foreseeable person." *TTCP Energy Fin. Fund II, LLC v. Ralls Corp.*, 255 F. Supp. 3d 1285, 1291 (N.D. Ga. 2017) Plaintiffs allege they justifiably relied upon false information negligently supplied by Ferrari. (*See, e.g.*, ¶¶ 237-45, 311.) At this stage, the Court declines to dismiss the Georgia negligent misrepresentation claim as barred by the economic loss doctrine.

**New Jersey:** To state a negligent misrepresentation claim under New Jersey law, a plaintiff must plead "that the defendant negligently made an incorrect statement upon which the plaintiff justifiably relied." *Argabright v. Reem Mfr. Co.*, 201 F. Supp. 3d 578, 603 (D.N.J. 2016). An omission may also form the basis of a negligent misrepresentation claim if "the breaching party owes an independent duty imposed by law." *Id.* (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 279-80 (N.J. 2002)). Defendant argues Plaintiffs Carlucci and Mauceli's negligent misrepresentation claims are barred by the economic loss doctrine. (Def. Br. at 22.)

Under New Jersey law, the economic loss doctrine does not always bar claims for negligent misrepresentation. *Hurst v. BMW of N. Am., LLC*, No. 22-03928, 2024 U.S. Dist. LEXIS 104516, at *21 (D.N.J. June 11, 2024); *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 U.S. Dist. LEXIS 209659, at *61-62 (D.N.J. Dec. 5, 2019); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 U.S. Dist. LEXIS 70299, at *66 (D.N.J. May 8, 2017). "The threshold question regarding the economic loss doctrine's applicability is 'whether the allegedly tortious conduct is extraneous to the contract.'" *Atlas Acquisitions, LLC v. Porania, LLC*, No. 18-17524, 2019 U.S. Dist. LEXIS 200564, at *7-8 (D.N.J. Nov. 14, 2019) (quoting *Fischell v. Cordis Corp.*, No. 16-00928, 2016 WL 5402207, at *8 (D.N.J. Sept. 26, 2016)). Here, Plaintiffs allege Defendant owed a duty to disclose outside the scope of the contract as a result of Defendant's partial disclosures. (SAC ¶ 10, 190-91, 242.) Negligent misrepresentation claims based on economic loss have

survived dismissal in such situations. *Hurst*, 2024 U.S. Dist. LEXIS 104516, at *21 (citing *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 U.S. Dist. LEXIS 70299, at *66). The Court will not dismiss the New Jersey common law negligent misrepresentation claim on this basis.

### iii. Arguments Regarding Actionable Misrepresentations, Reliance, Presale Knowledge, and Duty to Disclose

Defendant argues the negligent misrepresentation claims must be dismissed because Plaintiffs failed to sufficiently plead actionable misrepresentation, reliance, presale knowledge, and duty to disclose. (Def. Br. at 12-19.) In opposition, Plaintiffs note that this Court previously found Plaintiffs' allegations sufficient to establish actionable misrepresentation, presale knowledge, and duty to disclose at the pleading stage. (Opp. at 10- 14.) The Court agrees with Plaintiffs, and it will not revisit its prior findings. Plaintiffs again assert that to the extent Defendant raises the reliance-based argument as to the negligent misrepresentation claims, Defendant is precluded from raising such arguments now as it failed to raise these arguments in prior motions to dismiss. (Opp. at 11-12.) As explained above, generally, "[a] party that makes a motion under [Rule 12] must not make another motion under [the] rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Accordingly, the Court will not address these reliance-based arguments.[8]

Defendant's motion to dismiss Count 3 is granted to the extent the claims are brought under California, Florida, and Massachusetts law, but denied to the extent the claims are brought under Georgia and New Jersey law.

---

[8] "Essentially, 'Rule 12(g)(2) requires the Court to entertain only those arguments made by Defendants that were not previously available to them.'" *JD Glob. Sales, Inc. v. Jem D Int'l Partners, LP*, No. 21-19943, 2023 U.S. Dist. LEXIS 122893, at *27 (D.N.J. July 17, 2023) (quoting *Omodunbi v. Gordin & Berger*, P.C., No. 17-7553, 2021 WL 5277203, *2 (D.N.J. Nov. 12, 2021)). The procedural bar covers all successive motions to dismiss for failure to state a claim, *Leyse v. Bank of Am. Nat. Ass'n,* 804 F.3d 316, 321 (3d Cir. 2015), and applies with equal force to motions to dismiss an amended complaint. *JD Glob. Sales, Inc.*, 2023 U.S. Dist. LEXIS 122893, at *27-28.

### 3.  Unjust Enrichment (Count 4)

Defendant moves to dismiss each unjust enrichment claim on several grounds. The Court will address each claim in turn.

**California:** In Count 4, Plaintiff Nechev purports to assert an unjust enrichment claim under California common law on behalf of himself and the California subclass. Defendant argues the California unjust enrichment claim must be dismissed because California does not recognize unjust enrichment as a standalone claim. (Def. Br. at 29.)[9] In opposition, Plaintiff asserts that although California law does not recognize a standalone claim for unjust enrichment, the Court should allow the claim to proceed as one for restitution. (Opp. at 28.)

There is a mix of authority on the issue of whether California permits standalone claims for unjust enrichment. *Solar Integrated Roofing Corp. v. Massey*, No. 23-2323, 2024 U.S. Dist. LEXIS 81464, at *14-15 (S.D. Cal. May 3, 2024). The Ninth Circuit and some California district courts have found that California does not recognize unjust enrichment as a standalone cause of action. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (stating that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'") (citations omitted); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132-33 (N.D. Cal. 2020) (noting that courts have consistently dismissed standalone claims for unjust enrichment); *see also Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020). On the other hand, the Ninth Circuit has also stated that "while California case law appears unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners, LP v. Stratos*,

---

[9] While Defendant argues California precludes unjust enrichment claims where plaintiff does not allege he conferred a direct benefit upon defendant, Defendant does not cite any cases applying California law that say as much. Therefore, the Court does not address this argument.

828 F.3d 1023, 1038 (9th Cir. 2016). Following the Ninth Circuit's decision in *ESG Capital Partners*, some district courts in the Ninth Circuit have allowed unjust enrichment claims to proceed. *See Lozano v. Walmart*, No. 23-4500, 2024 WL 412606, at \*12 (C.D. Cal. Feb. 1, 2024); *Snopes Media Grp., Inc. v. Mikkelson*, No. 21-1730, 2022 WL 1343106, at \*5 (S.D. Cal. May 3, 2022); *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1153-54 (S.D. Cal. Nov. 1, 2022); *see also Giannetta v. Marmel*, No. 20-1410, 2021 WL 2954083, at \*3 (C.D. Cal. Mar. 19, 2021). Due to the lack of uniformity in the case law, the Court denies the motion to dismiss Count 4 as pled under California law. *Solar Integrated Roofing Corp. v. Massey*, No. 23-2323, 2024 U.S. Dist. LEXIS 81464, at \*15 (S.D. Cal. May 3, 2024) (denying motion to dismiss California unjust enrichment claim because of lack of uniformity in case law).

**Florida:** In Count 4, Plaintiffs Mirti and Hardwick purport to assert unjust enrichment claims under Florida common law on behalf of themselves and the Florida subclass. Defendant argues the Florida unjust enrichment claim must be dismissed because it is precluded by the Florida express warranty claim. (Def. Br. at 29.) Plaintiffs argue they may not have an adequate remedy at law such that the unjust enrichment claim should proceed. (Opp. at 29.) Under Florida law, "unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists." *Alvarez v. Royal Caribbean Cruises, Ltd,* 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). An unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute. *See, e.g., Zarrella v. Pac. Life Ins. Co.,* 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). As an equitable remedy, an unjust enrichment claim cannot be maintained where a plaintiff has an adequate remedy at law. *Zarrella,* 755 F. Supp. 2d at 1227. Here, because there are adequate remedies at law available through fraud-based claims and warranty claims, the unjust enrichment claims must fail. *See*

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107, 2014 U.S. Dist. LEXIS 59991, at *25-26 (S.D. Fla. Apr. 30, 2014) (finding unjust enrichment claim was barred where express warranty claim could be sustained). Whether Plaintiffs fail to state other claims at this stage is immaterial to saving the unjust enrichment claim. *See Licul v. Volkswagen Grp. Of Am.,* 2013 U.S. Dist. LEXIS 171627, at *22 n. 2 (S.D. Fla. Dec. 5, 2013) ("That Plaintiffs' warranty and FDUTPA claims may also prove without merit does not impact whether their unjust enrichment claim should be dismissed as duplicative.") Accordingly, the Florida unjust enrichment claims are dismissed without prejudice.

**Georgia:** In Count 4, Plaintiff Rose purports to assert an unjust enrichment claim under Georgia common law on behalf of himself and the Georgia subclass. Defendant argues the Georgia unjust enrichment claim must be dismissed because it is precluded by the Georgia express warranty claim. (Def. Br. at 29.) Plaintiffs argue they may not have an adequate remedy at law such that the unjust enrichment claim should proceed. (Opp. at 29.) Under Georgia law, "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *McClure v. Toyota Motor Corp.*, No. 22-3898, 2024 U.S. Dist. LEXIS 237685, at *50 (N.D. Ga. Dec. 11, 2024) (quoting *May v. S.E. GA Ford, Inc.*, 811 S.E.2d 14, 18 (Ga. 2018)). "A party may plead the claims in the alternative only if one or more of the parties contests the existence of the express contract." *Ed Federkeil Racing v. Fire Service Plus*, No. 20-141, 2021 WL 2555582, at *7 (N.D. Ga. Mar. 16, 2021); *Techjet Innovations Corp. v. Benjelloun*, 203 F. Supp. 3d 1219, 1234 (N.D. Ga. 2016) ("[A] plaintiff may not plead an unjust enrichment claim . . . when it is undisputed (or when the court has found) that a valid contract exists."). Here, the parties do not dispute the existence of the

express warranty. Accordingly, the Georgia unjust enrichment claim is dismissed without prejudice.

**Massachusetts**: In Count 4, Plaintiff DiSantis purports to assert an unjust enrichment claim under Massachusetts common law on behalf of himself and the Massachusetts subclass. Defendant argues the Massachusetts unjust enrichment claim must be dismissed because it is not a standalone claim. (Def. Br. at 29.) Plaintiff DiSantis argues his claim is viable. (Opp. at 28.) Under Massachusetts law,

> [u]njust enrichment is an equitable remedy, which exist[s] to supplement those available at law and not to contradict the judgments embodied in the statutes and the common law. Thus, a party with an adequate remedy at law cannot claim unjust enrichment. Specifically, [i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment.

*Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82-83 (1st Cir. 2020) (alterations in original) (citations and internal quotation marks omitted). Here, there are adequate remedies at law available to Plaintiff DiSantis, including Chapter 93A, fraudulent concealment, and breach of warranty. *See Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 105 (D. Mass. 2021). Whether Plaintiff DiSantis fails to adequately state such claims is immaterial. *Id.* (citing *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) ("Although [the plaintiff] argues that, if her other claims are dismissed, she effectively has no adequate remedy, this argument misapprehends the relevant law. It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment.")). Accordingly, the Massachusetts unjust enrichment claim is dismissed without prejudice.

**New Jersey:** This Court previously dismissed the New Jersey unjust enrichment claim. (ECF 144 at 22; ECF 67 at 18.) Defendant moves to dismiss for the same (and additional) reasons. (Def. Br. at 29.) None of Plaintiffs' new arguments against dismissal change the Court's prior

analysis. (*See* Opp. at 29.) Accordingly, the New Jersey common law unjust enrichment claim is dismissed without prejudice.

Defendant's motion to dismiss Count 4 is granted to the extent the claims are brought under Florida, Georgia, Massachusetts, and New Jersey law, but denied to the extent the claims are brought under California law.

## C. State Statutory Consumer Protection Claims

Plaintiffs assert several state statutory claims on behalf of themselves and their respective state sub-classes. The Court addresses each claim in turn.

### 1. Violation of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1, *et seq.* (Count 1)

In Count 1, Plaintiffs Carlucci and Mauceli assert Defendant violated the NJCFA. In the March 20, 2024 opinion, this Court previously dismissed Carlucci's NJCFA claim because he failed to plead ascertainable loss. (ECF 144 at 11-12.) Defendant argues that Carlucci and Mauceli's claims must be dismissed for the same reason. (Def. Br. at 23.) The Court agrees.

"To state a prima facie case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). "An actionable loss is not 'hypothetical or illusory.'" *Spera v. Samsung Elecs. Am., Inc.*, No. 12- 05412, 2014 WL 1334256, at *5 (D.N.J. Apr. 2, 2014) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005)). Instead, "what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised

product and the actual product received." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). "The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser." *Cohen*, 2022 WL 721307, at *28 (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794 (N.J. 2005)). Here, neither Carlucci nor Mauceli has adequately pled that their vehicles experienced an ascertainable loss. Accordingly, Count 1 is dismissed without prejudice.

### 2. Violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (Count 7)

In Count 7, Plaintiff Nechev brings a claim for violation of California's Consumer Legal Remedies Act ("CLRA"). CLRA claims are subject to a three-year statute of limitations. *Finney v. Ford Motor Co.*, No. 17-06183, 2018 U.S. Dist. LEXIS 93823, at *5 (N.D. Cal. June 4, 2018) (citing Cal. Civ. Code § 1783). For the reasons set forth above in Section B(1)(i), Plaintiff Nechev's CLRA claim (Count 7) is dismissed without prejudice.

### 3. Violations of California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code § 17200, *et seq.* (Count 8)

"The UCL prohibits 'unlawful, unfair or fraudulent business act[s] or practice[s].'" *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 862-63 (C.D. Cal. 2022) (quoting Cal. Bus. & Prof. Code § 17200). "Each of these three adjectives captures a separate and distinct theory of liability." *Nazemi*, 637 F. Supp. 3d at 863 (quoting *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks omitted)). A business practice can violate one or each of the three prongs. *Nazemi*, 637 F. Supp. 3d at 863. Indeed, "[t]he UCL's coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Nazemi*, 637 F. Supp. 3d at 863 (quoting *Cel-Tech Commc'ns, Inc. v.*

*L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal 1999)). Plaintiff Nechev purports to bring a UCL claim pursuant to all three prongs.

### a. Fraudulent Prong

To state a claim under the UCL's "fraudulent" prong, Plaintiff Nechev must allege that Ferrari engaged in conduct likely to deceive members of the public, evaluated from the perspective of a reasonable consumer. *See Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "A plaintiff must plead that there is a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Nazemi*, 637 F. Supp. 3d at 863 (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003)). UCL fraud does not require a showing of intent, scienter, actual reliance, or damage. *Nazemi*, 637 F. Supp. 3d at 863.

"[U]nder California law, a manufacturer can be sued under the . . . UCL if it had exclusive knowledge of a safety-related defect or if it actively concealed such a defect." *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1063 (C.D. Cal. 2015). Defendant argues that Plaintiff Nechev fails to adequately plead that Ferrari had exclusive knowledge of the defect or that it actively concealed the defect. (Def. Br. at 20.) Plaintiff Nechev asserts Ferrari possessed exclusive access to and was in a superior position to know the facts about the Brake Defect. (SAC ¶ 106.) Plaintiffs assert Ferrari's knowledge is established by (1) testing conducted to remain in compliance with Federal Motor Vehicle Safety Standard regulations; (2) international and domestic litigation alleging defective brakes; (3) NHTSA complaints, which Ferrari is legally obligated to monitor; (4) discussions on Ferrari owner forums, which are sponsored by several authorized Ferrari dealerships; (5) highly publicized manifestations of brake failure; (6) warranty claims submitted

to Ferrari's network of dealerships, which could be the primary source of Ferrari's knowledge and in its exclusive possession; (7) discussions between customers and Ferrari executives, including those managing after sales operation and customer care at Ferrari; and (8) post-brake-failure communications between Bosch and Ferrari concerning the root cause of any braking issues in the class vehicles, including post-recall. (SAC ¶ 7.) At this stage, these allegations are sufficient, and Plaintiff Nechev states a "fraud" UCL claim.

### b.  Unfair Prong

In consumer actions, California courts are split on a single definition of unfair business practices. *Nazemi*, 637 F. Supp. 3d at 864. The Ninth Circuit has explained that courts consider

> (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law, (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal quotation marks and citations omitted). Here, Plaintiff Nechev appears to invoke all three bases. (SAC ¶ 376 ("Defendants' conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff Nechev, and California consumers. The harm to Plaintiff Nechev arising from Defendants' conduct outweighs any legitimate benefit Defendants derived from the conduct.").) Other than this allegation, however, Plaintiff Nechev does not enumerate the basis for his "unfair" UCL violation. Accordingly, at this stage, he does not state an "unfair" UCL claim.

### c.  Unlawful Prong

Plaintiff Nechev also purports to bring an "unlawful" UCL claim. (SAC ¶ 375.) "A UCL claim under the 'unlawful' prong 'borrows violations of other laws and treats' them as unlawful business practices 'independently actionable under section 17200.'" *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 864-65 (C.D. Cal. 2022) (citing *Farmers Ins. Exch. v. Superior Ct.*, 826 P.2d 730, 734 (Cal. 1992) (internal quotation marks omitted)). "Thus, to state a UCL claim, Plaintiff must plead a violation of another statute or common law." *Nazemi*, 637 F. Supp. 3d at 864 (citation omitted). Because the Court declined to dismiss Plaintiff Nechev's California unjust enrichment claim based on the arguments before the Court, Plaintiff Nechev has alleged a predicate violation of law, and the unlawful UCL claim may proceed.

### 4. Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (Count 11)

In Count 11, Plaintiffs Mirti and Hardwick, on behalf of themselves and the Florida subclass, allege Defendant violated the FDUTPA. Defendant argues that Plaintiffs Mirti and Hardwick's claims are barred by the FDUTPA's four-year statute of limitations.[10] (Def. Br. at 12.) In opposition, Plaintiffs assert "tolling is entirely plausible because Ferrari knew about the Brake Defect and never disclosed it, and actively concealed it by issuing a series of 'remedies' that Ferrari knew to be ineffective." (Opp. at 11 (citing SAC ¶¶ 117-27).)

The statute of limitations for Plaintiffs' FDUTPA claims is four years. *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019) (citing Fla. Stat. § 95.11(3)(f); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107, 2014 U.S. Dist. LEXIS 59991, at *18-19 (S.D. Fla. Apr. 30, 2014)). "A FDUTPA claim accrues 'at the time of purchase or lease of a product, not upon discovery of an alleged defect.'" *Padilla*, 391 F. Supp 3d at 1112

---

[10] A court may dismiss a claim as untimely "only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017).

(quoting *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *18-19 (citing *Matthews v. Am. Honda Motor Co.*, No. 12-60630, 2012 U.S. Dist. LEXIS 90802, at *11 (S.D. Fla. June 6, 2012))). Plaintiff Mirti purchased his class vehicle in July 2019. (SAC ¶ 53). He filed suit in February 2024. (*See* ECF 143.) Plaintiff Hardwick purchased his class vehicle on February 18, 2020. (SAC ¶ 38.) Hardwick filed suit on June 3, 2024. (*Id.*) In both instances, each Plaintiff filed suit after the statute of limitations had run. While it appears Plaintiffs raise the issue of fraudulent concealment to toll the statute of limitations on their FDUTPA claims, Plaintiffs Mirti and Hardwick individually have not pled sufficient facts to support this tolling argument. "Plaintiffs must [] plead factual matter establishing that [Ferrari] 'deliberately and actively concealed the material facts *for the purpose of inducing [Plaintiffs] to delay filing this action.*'" *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1113 (S.D. Fla. 2019) (emphasis added) (quoting *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *20). Therefore, Count 11 is dismissed without prejudice.

### 5. Violation of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370, *et seq.* ("GUDTPA") (Count 14)

This Court previously held that Plaintiff Rose states a claim under the GUDTPA. (ECF 144 at 13 ("Therefore, because Plaintiff Rose added allegations to allege future harm and sufficiently pleads an agency relationship, Defendants' motion to dismiss as to the GUDTPA claim (Georgia Count I) is denied.).) Plaintiff Rose still states a GUDTPA claim, and Defendant's motion to dismiss Count 14 is denied.

### 6. Violations of the Georgia Fair Business Practices Act ("GFBPA"), Ga. Code Ann. §§ 10-1-390, *et seq.* (Count 15)

This Court previously declined to dismiss Plaintiff Rose's GFBPA claim because the parties did not sufficiently brief whether the GFBPA's bar on representative actions applied. (ECF 144 at

13-14.) Given the parties minimal briefing on this issue, the Court's position remains the same. *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-cv-10546, 2023 U.S. Dist. LEXIS 78785, at *37-38 (D.N.J. May 4, 2023) (declining to dismiss the GFBPA claim because the interplay between the GFBPA and Federal Rule of Civil Procedure 23 governing class actions "is a 'thorny issue,' that has been accompanied with minimal briefing by the parties given the litany of other claims at issue."). Accordingly, the Court still finds dismissal at this stage to be inappropriate.

### 7.   Violations of the Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws Ch. 93a, § 1, *et seq.* (Count 18)

In Count 18, Plaintiff DiSantis asserts Ferrari violated the MCPA. The MCPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Awalt v. GM, LLC*, No. 21-10111, 2023 U.S. Dist. LEXIS 56166, at *4 (D. Mass. Mar. 31, 2023) (quoting Mass. Gen. Laws ch. 93A, § 2(a)). To state a claim under Chapter 93A, a plaintiff must plausibly allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Awalt*, 2023 U.S. Dist. LEXIS 56166, at *4-5 (quoting *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 169 (Mass. App. Ct. 2009)). Defendant argues Plaintiff DiSantis' claim fails because he failed to allege superior knowledge or reliance on a misleading partial disclosure. (Def. Br. at 20-21.) The case Defendant cites to support this argument discusses superior knowledge in the context of common law fraud claims, not in the context of an MCPA claim. *See First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010).[11] Furthermore, "[u]nder the [M]CPA, 'a plaintiff "need not

---

[11] Defendant does not direct the Court to cases discussing superior knowledge or reliance in the context of an MCPA claim. However, the SAC contains allegations as to Defendant's superior knowledge. (SAC ¶¶ 132; 245.)

show proof of actual reliance on a misrepresentation in order to recover damages"; instead, the plaintiff must show "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception."" *Cohen v. Subaru of Am., Inc.*, No. 20-08442, 2022 U.S. Dist. LEXIS 42496, at *79-80 (D.N.J. Mar. 10, 2022) (quoting *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (quoting *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 886 n.12 (Mass. 2008)). Plaintiff DiSantis alleges that had he known the truth about the Brake Defect, he would not have purchased his class vehicle, or he would have paid significantly less for it. (SAC ¶ 524); *see Cohen*, 2022 U.S. Dist. LEXIS 42496, at *80 ("Plaintiffs allege that they would not have purchased or paid []as much [for] their vehicles containing Denso fuel pumps had they known of the Defect, which is sufficient to state a Mass. CPA claim under this standard."). Accordingly, the motion to dismiss Count 18 is denied.

### D. Express Warranty Claims

#### 1. Breach of Express Warranty, Fla. Stat. §§ 672.313 and 680.21 (Count 9)

In Count 9, Plaintiffs Mirti and Hardwick assert claims for breach of express warranty. They state, "Ferrari issued an express written warranty for each Class Vehicle it sold or leased that warranted the Class Vehicles would be free of defects in materials and workmanship at the time of sale or lease and that the Class Vehicles contained properly functioning braking systems." (SAC ¶ 386.) They do not, however, specify the warranty's terms. This is insufficient to state a Florida express warranty claim. *See Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199, 2009 U.S. Dist. LEXIS 107192, at *11 (S.D. Fla. Nov. 17, 2009) (explaining that in order to state a claim, plaintiffs needed to plead where the express warranty was expressed and to state its precise terms); *Precht v. Kia Motors Am., Inc.*, No. 14-1148, 2014 U.S. Dist. LEXIS 185202, at *23 (C.D. Cal. Dec. 29,

2014) (applying Florida law and explaining the requirement that breaches of express warranties be pled with specificity and dismissing claim). Accordingly, Count 9 is dismissed without prejudice.[12]

### 2.  Breach of Express Warranty, Ga. Code. Ann. §§ 11-2-313 and 11-2a-210 (Count 12)

In Count 12, Plaintiff Rose brings an express warranty claim under Georgia law. This Court previously dismissed Plaintiff Rose's express warranty claim for failure to provide Ferrari with pre-suit notice. (ECF 144 at 14-15.) Defendant argues the claim must be dismissed again for the same reason. (Def. Br. at 26.) "Georgia law imposes two conditions before a breach of express warranty can exist: (1) notice of the defect; and (2) a reasonable opportunity to repair the defect." *Barnes v. Medtronic, Inc.*, No. 20-04310, 2021 U.S. Dist. LEXIS 159341, at *11 (N.D. Ga. Aug. 24, 2021) (citing *Knight v. Am. Suzuki Motor Corp.*, 612 S.E.2d 546, 549 (Ga. Ct. App. 2005)); *see Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 225 (S.D.N.Y. 2015) (applying Georgia law and explaining that pre-suit notice is required to establish breach of express warranty). While Plaintiff Rose amended his allegations to assert that he provided Ferrari with notice of his claims in a January 5, 2022 letter (SAC ¶ 433), this letter was sent after he initiated suit on December 30, 2021. (*See* ECF 1.) Accordingly, Count 12 is dismissed without prejudice.

### 3.  Breach of Express Warranty, Mass. Gen Laws Ch.A 106, §§ 2-313 and 2a-210 (Count 16)

In Count 16, Plaintiff DiSantis asserts a claim for breach of express warranty. He states, "Ferrari issued an express written warranty for each Class Vehicle it sold or leased that warranted the Class Vehicles would be free of defects in materials and workmanship at the time of sale or lease and that the Class Vehicles contained properly functioning braking systems." (SAC ¶ 491.)

---

[12] Because the Court dismisses this claim for failure to adequately plead the terms of the express warranty, it does not reach Defendant's other arguments for dismissal.

He does not, however specify the terms of the warranty. Under Massachusetts law, "[t]he theory of such a[n express warranty] claim is that the defendants are liable to the plaintiff for failure to provide a design that meets a standard of performance allegedly promised by the defendants." *Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 438 (D. Mass. 2020) (quoting *Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.*, 489 N.E.2d 172, 175 (Mass. 1986) "Because the standard of performance is set by defendant's express promises to the plaintiff, 'the plaintiff must demonstrate that the defendant promised a specific result' and that defendant failed to deliver on his promise and, therefore, breached the express warranty." *Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*, 330 F. Supp. 3d 616, 627 (D. Mass. 2018) (quoting *Anthony's Pier Four, Inc.*, 489 N.E.2d at 175). Here, Plaintiff DiSantis has not identified the terms of the warranty that Ferrari allegedly breached. Accordingly, Count 16 is dismissed without prejudice.[13]

### 4. Breach of Express Warranty, N.J. Stat. Ann. §§ 12a:2-313 and 12a:2a-210 (Count 19)

In Count 19, Plaintiff Mauceli asserts a claim for breach of express warranty.[14] Defendant asserts Plaintiff Mauceli's claim is barred by New Jersey's four-year statute of limitations for express warranty claims. (Def. Br. at 23. (citing N.J. Stat. Ann. § 12A:2-725(1).) Plaintiff Mauceli purchased a new 2017 Ferrari vehicle on January 6, 2017. (SAC ¶ 47.) Defendant asserts that pursuant to the warranty's terms, the warranty expired three years later, by January 6, 2020. (Def. Br. at 23.) Defendant argues no breach of express warranty could have occurred after the warranty's expiration, and Plaintiff Mauceli filed suit four years after expiration. (*Id.*) In

---

[13] Because the Court dismisses this claim for failure to adequately plead the terms of the express warranty, it does not reach Defendant's other arguments for dismissal.

[14] Plaintiffs concede that Count 19 should be dismissed as to Plaintiff Carlucci. (Opp. at 16.)

opposition, Plaintiff Mauceli argues the statute of limitations should be tolled, but he cites no New Jersey case law in support of this argument. Accordingly, Count 19 is dismissed without prejudice.

### E. Implied Warranty Claims

#### 1. California: Breach of Implied Warranty of Merchantability, Cal. Com. Code §§ 2314 and 10212 (Count 5)

In Count 5, Plaintiff Nechev brings a breach of implied warranty of merchantability claim pursuant to California statute. Defendant moves to dismiss Count 5 because there is a lack of privity between Plaintiff Nechev and Ferrari. (Def. Br. at 28.)[15] Plaintiff argues an agency exception to the privity requirement applies. (Opp. at 24.)

Under California law, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Among California courts, there is no consensus as to whether a third-party beneficiary exception applies to the privity requirement within the consumer context. *See Tappana v. American Honda Motor Co., Inc.*, 609 F. Supp. 3d 1078, 1086 (C.D. Cal. 2022) (holding "where a plaintiff sufficiently pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the warranty's breach."); *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 915 (E.D. Cal. 2018) (holding "that *Clemens* forecloses a third-party-beneficiary exception to the rule of privity.") However, guided by *Clemens*, this Court declines to create new exceptions to the privity requirement set out by the California courts. *See Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at *39 (D.N.J. Oct. 19, 2023) (declining to create new privity exception). Accordingly, Count 5 is dismissed without prejudice.

---

[15] Because the Court dismisses this claim for lack of privity, it does not address Defendant's other arguments.

### 2. Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* (Count 6)

Plaintiff Nechev concedes that Count 6 must be dismissed, and the Court accordingly dismisses the claim.

### 3. Florida: Breach of Implied Warranty of Merchantability, Fla. Stat. §§ 672.314 and 680.212 (Count 10)

In Count 10, Plaintiffs Mirti and Hardwick assert breach of implied warranty claims pursuant to Florida statute. Defendant moves to dismiss Count 10 on several grounds, arguing lack of privity between Plaintiffs and Ferrari (Def. Br. at 28); Ferrari lacked a reasonable opportunity to repair (*id.* at 28-29); and the vehicles were not actually unmerchantable (*id.* at 26-27).[16]

"A cause of action for breach of implied warranty of merchantability requires allegations that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury." *Trophia v. Camping World, Inc.*, 616 F. Supp. 3d 1305, 1313, 1314, 1340 (M.D. Fla. 2022) (quoting *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011)).

Although "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity[,]" an agency or third-party beneficiary relationship can establish privity. *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233 (S.D. Fla. 2014) (quoting *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005)). Plaintiffs make several allegations purporting to establish agency relationships between Defendant and

---

[16] While Defendant also argues the defects did not manifest during the express warranty period (Def. Br. at 27), Plaintiffs have not pled the duration of their express warranties, and the Court is not equipped to address this argument at this time.

Ferrari dealerships. (*See, e.g.*, SAC ¶ 203 ("Ferrari requires Ferrari dealers to follow the rules and policies of Ferrari in conducting all aspects of dealer business, including the delivery of Ferrari's warranties described above and the servicing of defective vehicles such as the Class Vehicles."); *id.* ¶¶ 199-202.) Plaintiff Mirti purchased a certified pre-owned 2018 Ferrari 488 Spider from an authorized Ferrari dealership, S & W Sports Cars, Inc. d/b/a Ferrari Maserati of Atlanta. (SAC ¶ 53.) Because he purchased the vehicle from an authorized dealer and Plaintiffs include sufficient allegations at the pleadings stage to assert agency, Plaintiff Mirti's implied warranty claim will not be dismissed on this basis. However, Plaintiff Hardwick purchased a used 2018 Ferrari 488 GTB from Black Horse Motors of Naples. (SAC ¶ 38.) It is unclear from the SAC whether this is an authorized Ferrari dealership with which Ferrari maintains any relationship. Accordingly, Plaintiff Hardwick's implied warranty claim is dismissed without prejudice for lack of privity.

Defendant argues that Plaintiff Mirti's vehicle was not actually unmerchantable, and Ferrari lacked a reasonable opportunity to repair. However, Mirti's class vehicle did experience the Brake Defect, and he presented the vehicle for repair (SAC ¶¶ 71-76.) At this stage, this is sufficient to state a claim. Accordingly, the motion to dismiss Count 10 is denied as to Plaintiff Mirti but granted as to Plaintiff Hardwick.

### 4. Georgia: Breach of Implied Warranty of Merchantability, Ga. Code Ann. §§ 11-2-314 and 11-2a-212 (Count 13)

This Court previously denied Ferrari's motion to dismiss Plaintiff Rose's implied warranty claim. (ECF 144 at 16-19.) None of the arguments Ferrari raises now changes this conclusion, and Defendant's motion is denied as to Count 13.[17]

---

[17] Ferrari suggests this Court must "harmonize" its prior decision to dismiss the Georgia express warranty claim yet let the Georgia implied warranty claim proceed. (*See* Reply at 11.) Courts applying Georgia law have dismissed express warranty claims for lack of pre-suit notice while allowing implied warranty claims to proceed. *See,*

5.  **Massachusetts: Breach Of Implied Warranty of Merchantability, Mass. Gen. Laws Ch. 106, §§ 2-314 And 2a-212 against Ferrari (Count 17)**

Plaintiff DiSantis asserts a claim for breach of implied warranty of merchantability pursuant to Massachusetts statute. Defendant argues this claim must be dismissed because he has not pled that his vehicle is unmerchantable since the defect did not manifest. (Def. Br. 26-27.)[18] Plaintiff argues manifestation is not necessary. (Opp. at 22.)

> To recover on a claim of breach of the implied warranty of merchantability in the sale of a vehicle under Massachusetts law, a plaintiff must show that the vehicle was not fit for the ordinary purposes for which an automobile is generally used and that the defect existed at the time the vehicle was sold or leased. The ordinary purpose of a vehicle is to provide safe, reliable transportation.

*McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 25 (D. Mass. 2024) (quoting *Awalt v. Gen. Motors, LLC*, 2023 WL 2743294, at *3 (D. Mass. Mar. 31, 2023)). "As to automobiles, it has generally been held that a breach of the implied warranty of merchantability occurs only where a defect is so basic as to render the vehicle unfit for its ordinary purpose of providing safe, reliable transportation." *McCabe*, 720 F. Supp. 3d at 25 (citation omitted). Here, Plaintiff DiSantis has not

---

*e.g.*, *Barnes ex el. Gibson v. Medtronic, Inc.*, No. 20-04310, 2021 U.S. Dist. LEXIS 159341, at *10 (N.D. Ga. Aug. 24, 2021). The Court notes that "Georgia courts analyze breach of written, or express, warranty and breach of implied warranty claims differently[.]" *Cole v. NIBCO, Inc.*, No. 13-07871, 2015 WL 2414740, at *8 (D.N.J. May 20, 2015). "The Georgia Court of Appeals has found that 'delay alone [in providing reasonable notice to the seller] without prejudice caused by such delay is insufficient to bar relief to the plaintiff' under Georgia's statute pertaining to the breach of the implied warranty of merchantability." *Id.* (quoting *Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E.2d 83, 86 (Ga. Ct. App. 2003)). At the motion to dismiss stage, Ferrari has failed to demonstrate prejudice due to lack of pre-suit notice, and the Court declines to dismiss on this basis. *See Cole*, 2015 WL 2414740, at *9.

[18] While Defendant also moves to dismiss this claim based on a statute of limitations argument, it does not sufficiently brief whether the statute of limitations begin to run as to the initial sale of the vehicle or upon delivery of the vehicle to Plaintiff DiSantis. The Court notes that under Massachusetts law, when a claim for breach of an implied warranty of merchantability alleges an economic loss of value in the product itself, the claim sounds in contract. *Bessette v. IKO Indus.*, 30 F.4th 75, 82-83 (1st Cir. 2022) "As a general matter, 'a cause of action [for breach of contract under Massachusetts law] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* (quoting Mass. Gen. Laws ch. 106, § 2-725). "And, in accord with this general rule, '[a] breach of warranty occurs when tender of delivery is made.'" *Bessette*, 30 F.4th 75 at 83 (quoting Mass. Gen. Laws ch. 106, § 2-725).

sufficiently alleged that his vehicle is unfit for its ordinary purpose. He has not alleged that the Brake Defect manifest in his vehicle. Accordingly, the Court dismisses Count 17 without prejudice. *Compare Awalt v. GM, LLC*, No. 21-10111, 2023 U.S. Dist. LEXIS 56166, at \*9 (D. Mass. Mar. 31, 2023) (dismissing implied warranty claim where plaintiff "apparently still drives his truck, and he has not alleged that he has experienced any of those potential safety problems or that the Oil Consumption Defect has otherwise interfered with his safe operation of the vehicle"), *with McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 25 (D. Mass. 2024) (declining to dismiss where plaintiff alleged "his vehicle 'experienced complete loss of power while trying to accelerate at highway speeds.' . . . A car that 'experience[s] complete loss of power' while trying to accelerate onto a highway may not be capable of providing safe and reliable transportation.").

### 6. New Jersey: Breach of the Implied Warranty of Merchantability, N.J. Stat. Ann. § 12A:2-314 (Count 20)

Defendant asserts that Plaintiffs Carlucci and Mauceli's implied warranty claims must be dismissed because they do not plead any manifestation of the Brake Defect. (Def. Br. at 26-27.) The Court previously dismissed Plaintiff Carlucci's claim for this reason. (ECF 144 at 19.) Specifically, the Court explained that "[c]ourts in this district and elsewhere have dismissed claims for breach of implied warranty of merchantability where plaintiffs use their vehicles without the alleged defect 'having manifested itself.'" *Cohen*, 2022 WL 721307, at \*11 (quoting *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-1814, 2001 WL 1266317, at \*22 (D.N.J. Sept. 30, 1997) (collecting cases)); *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at \*15 (D.N.J. Dec. 29, 2011) (quoting *Sheris v. Nissan N.A., Inc.*, No. 07-2516, 2008 WL 2354908 (D.N.J. June 3, 2008)). Plaintiff Carlucci and Plaintiff Mauceli fail to plead facts showing the Brake Defect manifested in their vehicles, such that their vehicles were unfit for ordinary use.

Therefore, the Court dismisses Count 20 without prejudice. *See Cohen*, 2022 WL 721307, at *11 (dismissing implied warranty claims for plaintiffs who failed to allege that the defect ever caused their vehicles to malfunction).

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.** An appropriate order follows.

*/s/ Jamel K. Semper*         .
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:       Cathy L. Waldor, U.S.M.J.
            Parties